**PUBLISH**

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 24 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHARLES HOUGHTON, by and through his
spouse, Doris Houghton; DORIS HOUGHTON;
RONALD E. MATHEWS, by and through his
spouse, Claire Mathews; CLAIRE MATHEWS;
EILEEN V. RINO, by and through her spouse,
Frank H. Rino; FRANK H. RINO,

     Plaintiffs,

and

STEPHENY L. SELLERS, by and through her
spouse, R. Gene Sellers; R. GENE SELLERS,

     Plaintiffs-Appellants,

v.

KAREN REINERTSON, in her official capacity
as Executive director of the Colorado
Department of Health Care Policy and
Financing,

     Defendant-Appellee.

No. 03-1074

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 01-MW-2291)**

---

R. Eric Solem, Solem, Mack & Steinhoff, P.C., Englewood, Colorado, for the plaintiffs-
appellants.

Laurie A. Schoder, Assistant Attorney General, (Ken Salazar, Attorney General, with her on the brief), Denver, Colorado, for the defendant-appellee.

---

Before **EBEL**, **BRISCOE**, and **TYMKOVICH**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

A number of plaintiffs brought this action to challenge the revised Medicaid eligibility rules of the Colorado Department of Health Care Policy and Financing (Colorado), which now permit consideration of self-funded retirement accounts. Colorado has applied the new rule both to initial applications for benefits and to annual eligibility redeterminations. Plaintiffs brought this action pursuant to 42 U.S.C. § 1983, contending Colorado's new rules violated the Medicaid Catastrophic Care Act (MCCA). 42 U.S.C. § 1386r-5. Plaintiffs Stepheny L. Sellers and R. Gene Sellers appeal the district court's grant of summary judgment in favor of Colorado. While we agree in part with the district court's conclusions, we reverse and remand with directions to enter summary judgment in favor of the Sellers.

I.

Medicaid is a cooperative federal-state program authorized under Title XIX of the Social Security Act of 1965. See 42 U.S.C. § 1396 *et seq*. The program is "designed to afford medical assistance to persons whose income and resources are insufficient to meet the financial demands of necessary care and services." New Mexico Dep't of Human

2

Servs. v. Dep't of Health & Human Servs. Health Care Fin. Admin., 4 F.3d 882, 883 (10th Cir. 1993).  Under Medicaid, a participating state develops a written plan containing standards regarding eligibility for medical assistance.  These standards must be consistent with specified federal guidelines.  Schweiker v. Gray Panthers, 453 U.S. 34, 36-37 (1981).  Although participation in the federal Medicaid program is not mandatory, once a state elects to participate, "it must do so on the terms established by Congress."  Hern v. Beye, 57 F.3d 906, 913 (10th Cir. 1995).  The federal Medicaid laws set various limits on an individual's income and resources (assets other than income) for purposes of determining eligibility.

"Because spouses typically possess assets and income jointly and bear financial responsibility for each other, Medicaid eligibility determinations for married applicants have resisted simple solutions."  Wisconsin Dep't of Health & Family Servs. v. Blumer, 534 U.S. 473, 479 (2002).  Prior to 1988, when a spouse was institutionalized, the married couple's *jointly-held assets* were combined and that total was considered in determining either spouse's Medicaid eligibility.  Thus, the spouse remaining at home (community spouse) had to spend virtually all of the marital assets to trigger the institutionalized spouse's Medicaid eligibility.  H.R. Rep. No. 100-105(II), 100th Cong., 2nd Sess., at 65-67, reprinted in 1988 U.S.C.C.A.N. 857, 888-92.  As a result, some community spouses became prematurely institutionalized themselves due to a lack of financial self-sufficiency.  Id.  Conversely, any assets that were *held solely* by either

3

spouse were only considered in determining that spouse's Medicaid eligibility. Id. at 879-80. Therefore, when a pension check was issued to the husband, all of that income was considered his for the purpose of determining his eligibility if he entered a nursing home. Id. at 879. However, if the wife entered a nursing home, none of the husband's pension income was considered in determining the wife's eligibility and federal law did not obligate him to contribute toward the cost of her care. Id. As a result, a wealthy community spouse was able to shelter income and resources from inclusion in the calculation of the institutionalized spouse's eligibility.

In 1988, Congress sought to eliminate some of the undesired consequences of the existing eligibility provisions by amending the MCCA provisions of the federal Medicaid Act to include the "spousal impoverishment provisions." 42 U.S.C. § 1396r-5.[1] These amendments resulted in a complex methodology for separately calculating each spouse's resources and income and then using those calculations to determine the institutionalized spouse's Medicaid eligibility. Income allocation is governed by §§ 1396r-5(b) and (d). These sections exclude the community spouse's individual *income* when determining whether the institutionalized spouse qualifies for Medicaid. Sections 1396r-5(c) and (f) address the allocation of *resources*. Under those provisions, the couple's resources are added together when institutionalization begins and one-half of the total is allocated to

---

[1] With the exception of § 1396r-5 (the spousal impoverishment provisions), Congress has since repealed the remainder of the MCCA.

each spouse as the "spousal share." § 1396r-5(c)(1)(A). After the spousal share is determined, the community spouse is permitted to retain a specified maximum amount indexed to inflation, which is referred to as the community spouse resource allowance (CSRA). §§ 1396r-5(c)(2)(B), (f)(2)(A), (g). Any and all resources above the CSRA must be spent before the institutionalized spouse will be eligible for Medicaid. § 1396r-5(c)(2). Under the MCCA, a couple may obtain a "fair hearing" to challenge the state's determination of an institutionalized spouse's Medicaid eligibility, including the computation of the CSRA. § 1396r-5(e).

Colorado participates in the federal Medicaid program and accepts federal Medicaid funds. The Colorado Department of Health Care Policy and Financing is the state agency responsible for administering Colorado's Medicaid program. See Colo. Rev. Stat. § 26-4-110. In addition to covering individuals considered categorically needy as required by federal law, Colorado has elected to provide medical assistance to individuals living in nursing homes. See Colo. Rev. Stat. § 26-4-301. Pursuant to the MCCA, Colorado has enacted spousal protection provisions and authorized the Department of Health Policy to adopt rules and regulations necessary to implement these provisions, including eligibility determinations. See Colo. Rev. Stat. § 26-4-506.

In the fall of 2001, Colorado revised the eligibility guidelines used to calculate a married couple's resources when a spouse enters a nursing home and changed the way it classified self-funded retirement accounts such as IRAs, 401(k)s, or 403(b)s. Prior to that

5

revision, Colorado did not classify self-funded retirement accounts held by the community spouse as "resources" available to support the institutionalized spouse. As a result, self-funded retirement accounts were not included as resources in calculating the CSRA and did not affect the institutionalized spouse's Medicaid eligibility. On September 1, 2001, however, Colorado began including self-funded retirement accounts held by a community spouse as countable "resources" for the purpose of determining an institutionalized spouse's Medicaid eligibility. See 10 Colo. Code Reg. 2505-10, § 8.110.51C.[2] Colorado has applied this new rule both to initial applications for Medicaid

_____

[2] This new rule, which is the subject of this appeal, provides that the following retirement accounts will count toward the calculation of the couple's resources:

> 1. The following regulations apply to self-funded retirement accounts such as an Individual Retirement Account (IRA), Keogh Plan, 401(k), 403(b) and any other self-funded retirement account.
>> a. Self-funded retirement accounts in the name of the applicant are countable as a resource to the applicant.
>> b. Self-funded retirement accounts in the name of the applicant's spouse who is living with the applicant are exempt in determining eligibility for the applicant, except as set forth in c. below.
>> c. Self-funded retirement accounts in the name of a community spouse who is married to an applicant who is applying for long term care in a nursing facility, HCBS or PACE, are countable as a resource to the applicant and may be included in the Community Spouse Resource Allowance (CSRA) up to the maximum amount allowable. The terms community spouse and CSRA are further defined in the regulations on Spousal Protection in this volume.
> 2. The value of a self-funded retirement account is determined as follows:
>> a. The gross value of the account, less any taxes due, is the amount that is countable as a resource, regardless of whether any monthly income is being received from the account.
>> b. If the applicant is not able to provide the amount of taxes that are due, the value shall be determined by deducting 20% from the gross value of the

benefits and, as is the case here, to annual eligibility redeterminations.

The Sellers have been married since 1953. On August 20, 1996, Mrs. Sellers was admitted to Elms Haven Care Center and she applied for Medicaid benefits. On November 26, 1996, the Adams County Department of Social Services approved her application because the Sellers' total countable resources of $69,763 fell below the 1996 eligibility cap. Pursuant to the guidelines in place at that time, the Colorado Medicaid Agency did not include any of Mr. Sellers' retirement funds when determining Mrs. Sellers' Medicaid eligibility in 1996.

On February 1, 2000, Mr. Sellers retired from the Rio Grande Company, where his employer funded a pension plan and a profit-sharing plan. Mr. Sellers also had contributed to a 401(k) plan to which his employer provided matching contributions. Mr. Sellers rolled his retirement portfolio into his IRA. On December 17, 2000, when Mr. Sellers turned 70½ years of age, he received mandatory periodic payments from his IRA.

Mr. Sellers' retirement funds were not counted as resources in either 1999 or 2000 when Mrs. Sellers' Medicaid eligibility was reviewed. On October 3, 2001, Mr. Sellers submitted the necessary paperwork for Mrs. Sellers' annual eligibility redetermination. On November 1, 2001, the Adams County Department of Human Services determined that Mrs. Sellers had $212.85 in countable resources and $775.52 in monthly income. On

account.
Colorado Department of Health Care Policy and Financing, § 8.110.51(C); Aple. Supp. App. at 33.

December 18, 2001, the Adams County Department of Human Services notified Mr. Sellers that, based on new rules requiring consideration of his retirement assets in the amount of $454,000, the state had determined the Sellers had excess resources of $356,715.93 and Mrs. Sellers was no longer eligible for Medicaid benefits. Mrs. Sellers' benefits were terminated on December 31, 2001.

On March 20, 2002, the Sellers (along with three other married couples), brought this action against Karen Reinertson, in her official capacity as Executive Director of the Department of Health Policy pursuant to 42 U.S.C. § 1983.[3] Plaintiffs sought declaratory and injunctive relief, claiming Colorado's new rule violated the MCCA. Both sides filed motions for summary judgment. The magistrate judge, acting pursuant to 28 U.S.C. § 636(c) and the parties' consent, granted summary judgment in favor of Colorado on all claims.

## II.

The Sellers raise three issues on appeal. First, they contend the district court erred in determining, as a matter of law, that the MCCA permits the classification of retirement plans held by community spouses as "resources" available to the institutionalized spouse.

---

[3] Although the MCCA provides for a hearing by parties challenging an eligibility determination, the Sellers did not ask for a hearing. This fact, however, is not fatal to their § 1983 claim. See Porter v. Nussle, 534 U.S. 516, 523 (2002) ("plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court"); see also Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 521-22 (1990)(holding the Medicaid Act permits enforcement under § 1983 notwithstanding inclusion of alternative state administrative procedures).

Second, the Sellers contend the court's decision, as applied to them, violated § 1396r-5(c)(4) of the MCCA, which bars states from taking resources from the community spouse for the institutionalized spouse's benefit at any time following the month in which eligibility is first determined.  Third, they contend retirement plans held by the community spouse should be considered income rather than resources as long as periodic payments are being made from those plans.[4]

"In passing on the validity of a state Medicaid plan under federal law, the court must determine whether the plan is procedurally and substantively in compliance with the requirements of the Federal Medicaid Act and its implementing regulations." Amisub, Inc. v. Colorado Dep't of Social Servs., 879 F.2d 789, 795 (10th Cir. 1989).  The state agency's determination of procedural and substantive compliance with federal law is not entitled to the deference afforded a federal agency. Id. at 796.  Instead, this court undertakes a de novo review of the district court's grant of summary judgment, viewing the record in the light most favorable to the party opposing summary judgment. McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998).  Because we conclude

---

[4] The amended complaint asserted nine claims for relief.  The third and eighth claims for relief were voluntarily dismissed.  Two of the institutionalized spouses, Mr. Houghton and Mr. Mathews, died before the court entered its final judgment.  The first claim pertained solely to the Houghtons and the eighth claim pertained solely to the Mathews.  The respective spouses did not file a notice of appeal, nor did the Rinos.  In their notice of appeal, the Sellers have not pursued the fifth, seventh, eighth, and ninth claims.  This appeal only implicates the second, fourth, and sixth claims for relief reflected in the three issues raised on appeal, identified in the text of the opinion.

the overlapping questions of law raised in the first and second issues are dispositive, we do not address the Sellers' third issue.

*Does Colorado's new rule violate the MCCA?*

We first consider whether the new Colorado rule, requiring that self-funded retirement accounts held by a community spouse be classified as "resources," violates the MCCA. This is an issue of first impression in the federal courts.[5] In resolving this issue, we must explore the relationship between the MCCA and the remainder of the federal Medicaid Act, as well as Congress' purpose in enacting the MCCA and whether Colorado's new rule is contrary to that purpose.

Our starting point for determining Mrs. Sellers' Medicaid eligibility under the MCCA is 42 U.S.C. § 1396r-5(a)(1) which states:

> In determining the eligibility for medical assistance of an institutionalized spouse (as defined in subsection (h)(1) of this section), the provisions of [the MCCA] supercede any other provision of this subchapter (including sections 1386a(a)(17) and 1386a(f) of this title) which is inconsistent with them.

To determine whether the MCCA and the Medicaid Act treat retirement accounts inconsistently for purposes of determining Medicaid eligibility, we begin with the

---

[5] State courts in New Jersey, Ohio, and Wisconsin have addressed this issue and reached different conclusions. Compare Mistrick v. Div. of Med. Assistance, 712 A.2d 188 (N.J. 1998) (finding states not required to exclude IRAs under § 1396r-5) and Martin v. Ohio Dep't of Human Servs., 720 N.E.2d 576 (Ohio Ct. App. 1998) (same) with Keip v. Wisconsin Dep't of Health & Family Servs., 606 N.W.2d 543 (Wis Ct. App. 1999)(finding MCCA ambiguous and holding MCCA requires exclusion of retirement accounts from resource calculation).

MCCA's definition of "resources."  The MCCA defines resources through two

provisions.  First, we note Section 1396r-5(a)(3), which states:

> Except as this section [1396r-5] specifically provides, this section does not
> apply to--
>> (A) the determination of what constitutes income or resources, or
>> (B) the methodology and standards for determining and evaluating
> income and resources.

Section 1396r-5(a)(3) can thus be said to require states to follow the Medicaid Act's rules

for determining eligibility, except states must follow the MCCA's supplemental

requirements.  Second, for our purposes, we also note the relevant supplemental

requirements found in § 1396r-5(c)(5):

> In this section, the term "resources" does not include--
>> (A) resources excluded under subsection (a) or (d) of section 1382b,
> and
>> (B) resources that would be excluded under section 1382b(a)(2)(A)
> of this title but for the limitation on total value described in such section.

Notably, 42 U.S.C. § 1382b(a) (excluding, among other things, a home, household goods,

personal effects, and an automobile), § 1382b(d) (excluding burial expenses), and

§ 1382b(a)(2)(A) (elaborating on exclusions under § 1382b(a)), do not explicitly exclude

retirement accounts from the calculation of a married couple's total joint resources.

The district court concluded that, because the MCCA did not include retirement

accounts in the list of assets that were not "resources," Congress implicitly classified

retirement accounts as resources.  Therefore, the court determined, under the MCCA,

11

Colorado could include self-funded retirement accounts when determining an institutionalized spouse's Medicaid eligibility. See also Mistrick v. Div. of Med. Assistance, 712 A.2d 188 (N.J. 1998) (relying on maxim *inclusio unius est exclusio alterius* to find Congress did not intend to exclude retirement accounts under § 1396r-5); Martin v. Ohio Dep't of Human Servs., 720 N.E.2d 576 (Ohio Ct. App. 1998) (same); but see Keip v. Wisconsin Dep't of Health & Family Servs., 606 N.W.2d 543 (Wis. Ct. App. 1999) (finding the MCCA ambiguous and holding the MCCA requires exclusion of retirement accounts from resources calculation). Because this outcome arguably was inconsistent with the federal Medicaid Act, the court determined the MCCA's treatment of resources superceded the Medicaid Act. The Sellers contend the MCCA does not clearly address the status of retirement accounts and is therefore ambiguous. As a result, the Sellers argue we should apply the canons of statutory construction and conclude Congress did not intend that retirement accounts be included in Medicaid eligibility determinations.

Our analysis of whether the MCCA conflicts with the Medicaid Act begins with the MCCA's text, Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002), the plainness or ambiguity of which is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole. Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997). As a general rule of statutory construction, a statute is ambiguous if it is "capable of being understood in two or more

12

possible senses or ways." Chickasaw Nation v. United States, 534 U.S. 84, 90 (2001); see also Allen v. Geneva Steel Co., 281 F.3d 1173, 1178 (10th Cir. 2002) (noting "ambiguity exists when a statute is capable of being understood by reasonably well-informed persons in two or more different senses").

The parties have offered reasonable interpretations of the MCCA that are supported by Colorado's past and present practices. On the one hand, as Colorado argues and as the district court concluded, the MCCA reasonably can be read as incorporating § 1396r-5(c)(5)'s arguably finite list of assets that are excluded from the calculation of "resources" and, since retirement accounts are not excluded, they can be considered as resources. In reviewing the approach taken by several states in this circuit, New Mexico and Oklahoma appear to agree with that interpretation and classify the community spouse's retirement accounts as resources available to the institutionalized spouse. See N.M. Admin. Code tit. VIII, §§ 8.281.500.13, 8.281.500.16; Okla. Admin. Code § 317:35-5-41(d)(10)(A). Conversely, the approach in Kansas and Wyoming suggests the MCCA can also be interpreted as merely listing some items that are not countable as resources, but not setting forth an exclusive list of excludable assets. See Kan. Admin. Regs. § 30-6-109(d)(23); Wyo. Regs. ch. 7, § 14(a). Perhaps most tellingly, Colorado has interpreted this statute both ways. Initially, the Department of Health Policy required that retirement accounts be *excluded* from the institutionalized spouse's eligibility calculation. Not until 2001 did Colorado, in the absence of any changes to the MCCA or other

13

applicable federal law, revise its policy and promulgate several regulations explicitly including self-funded retirement accounts in its calculation of resources. See 10 Colo. Code Reg. 2505-10, § 8.110.51C. In light of these differing yet reasonable interpretations, we conclude the MCCA is ambiguous and does not address clearly how retirement accounts should factor into Medicaid eligibility.

In interpreting the MCCA, our primary task is to "determine congressional intent, using 'traditional tools of statutory construction.'" NLRB v. United Food & Commercial Workers Union, 484 U.S. 112, 123 (1987) (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 446 (1987)). "In so doing, we will assume that Congress' intent is expressed correctly in the ordinary meaning of the words it employs." St. Charles Inv. Co. v. Comm'r, 232 F.3d 773, 776 (10th Cir. 2000).

"[A] statute is to be considered in all its parts when construing any one of them." Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 36 (1998). To this end, the Sellers claim that since the MCCA is part of the Medicaid Act, the court should look at the Medicaid Act's eligibility requirements. Specifically, they argue that under § 1396a(r)(2) of the Medicaid Act, the states that elect to participate in Medicaid must establish reasonable standards for determining an applicant's eligibility which are "no more restrictive" than the eligibility requirements under the Supplemental Security Income (SSI) Act. 42 U.S.C. § 1396a(r)(2)(A). According to the Sellers, the Commissioner of Social Security's practice has been to exempt retirement funds

14

belonging to the ineligible spouse.  As evidence of this practice, they cite 20 C.F.R.

§ 416.1202(a), where the SSI guidelines state:

> In the case of an individual *who is living with* a person not eligible under this part and who is considered to be the husband or wife of such individual under the criteria in §§ 416.1802 through 416.1835 of this part, such individual's resources shall be deemed to include any resources, not otherwise excluded under this subpart, of such spouse whether or not such resources are available to such individual. In addition to the exclusions listed in § 416.1210, *pension funds which the ineligible spouse may have are also excluded.  Pension funds are defined as funds held in individual retirement accounts (IRA), as described by the Internal Revenue Code, or in work-related pension plans (including such plans for self-employed individuals, sometimes referred to as Keogh plans).*

(Emphasis added.)  The Sellers cite United States v. Mead Corp., 533 U.S. 218, 227

(2000), as authority for their view that the court must accord these guidelines some

deference.  As such, they claim the MCCA mandates that retirement accounts be excluded

and that the Colorado rule therefore violates federal law.

Like the district court, we are unpersuaded by this argument.  We agree that the

Medicaid Act's eligibility requirements (and therefore the MCCA's eligibility

requirements unless otherwise explicitly noted) must be no more restrictive than the SSI

eligibility requirements, but the SSI provides no guidance on the issue raised here.

Notably, § 416.1202(a) applies only when an SSI applicant is *living with* his or her

spouse.  By definition, an institutionalized spouse and a community spouse in the

Medicaid context do not live together.  We therefore conclude that neither the SSI, nor its

corresponding guidelines, address the eligibility requirements where one spouse is

15

institutionalized.

We are equally unpersuaded by Colorado's contention that reading the MCCA as a whole mandates including retirement accounts in the calculation of a married couple's resources. Although Colorado focuses on the MCCA's enumerated list of items that are excluded from the definition of "resources," its analysis ignores § 1396r-5(a)(3), which states that, with the exception of specific statements in the MCCA, the MCCA "does not apply to (A) the determination of what constitutes . . . resources, or (B) the methodology and standards for determining and evaluating . . . resources." Read together, these two provisions create the rule that, unless an asset is specifically mentioned by the MCCA, the classification of that asset for eligibility purposes depends on the federal Medicaid Act's treatment of that asset. Applying this rule to retirement accounts, we conclude that Congress did not explicitly exclude retirement accounts when defining resources. Rather, we conclude that Congress neither foreclosed nor mandated a particular classification for retirement accounts.

Next, we consider the MCCA's legislative history. See Allen, 281 F.3d at 1178 ("if a statute is ambiguous a court may seek guidance from Congress' intent, a task aided by reviewing the legislative history"). The legislative history attending the MCCA's enactment unequivocally suggests that Congress sought to strike a balance between the need to limit the pauperization of the community spouse and the need to prevent wealthy couples from benefitting from Medicaid coverage. As the Supreme Court recently

16

explained:

> As Congress . . . found when it enacted the MCCA in 1988, [the] existing practices for determining a married applicant's income and resources produced unintended consequences. Many community spouses were left destitute by the drain on the couple's assets necessary to qualify the institutionalized spouse for Medicaid and by the diminution of the couple's income posteligibility to reduce the amount payable by Medicaid for institutional care. Conversely, couples with ample means could qualify for assistance when their assets were held solely in the community spouse's name.
>
> In the MCCA, Congress sought to protect community spouses from "pauperization" while preventing financially secure couples from obtaining Medicaid assistance. To achieve this aim, Congress installed a set of intricate and interlocking requirements with which States must comply in allocating a couple's income and resources.

Blumer, 534 U.S. at 480 (internal citations omitted); see also 133 Cong. Rec. 6453 (1987).

In consideration of the MCCA's legislative history, we agree with the Sellers that there will be instances where a rule requiring that retirement accounts be included in assessing a couple's "resources" has unintended consequences at odds with MCCA's purpose. Here, after inclusion of Mr. Sellers' IRA resulted in his wife becoming ineligible for Medicaid, he was forced to end his retirement and return to work in order to have enough income to sustain himself. In such a case, consistent with congressional intent, one could say that excluding the IRA is necessary to prevent the "pauperization" of the community spouse. Conversely, one could envision a situation where a married couple has very few resources, except a substantial IRA, and sheltering the IRA from the Medicaid eligibility calculation would unfairly allow a spouse to receive Medicaid

17

benefits. In sum, the legislative history does not suggest that Congress envisioned a steadfast rule, but rather intended to address a wide range of possibilities through a general framework that delegated rule-making authority to the states.

We find it particularly noteworthy that the Centers for Medicare and Medicaid Services (CMS), the administrative agency to which Congress has delegated its Medicaid rulemaking power, similarly has not promulgated any rules or issued any agency opinions addressing the classification of retirement accounts under the MCCA. Further, the agency's practice reveals no clear policy preference. As Colorado points out, Cyndi Gillaspie, the agency's regional health insurance specialist, sent a letter to Colorado on December 18, 2002, stating the MCCA superceded all other provisions of the Medicaid Act, and pension funds owned by the "ineligible" spouse should be included "when calculating the spousal share at the time a spouse becomes institutionalized." Aple. Supp. App. at 1. Contrary to this letter, CMS has approved a wide range of state Medicaid plans, some of which include retirement accounts in an institutionalized spouse's eligibility determination and others that do not. To the extent the agency's practices are accorded limited deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944), "given the 'specialized experience and broader investigations and information' available to the agency," Mead, 533 U.S. at 235 (quoting Skidmore, 323 U.S. at 139), that limited deference is of minimal guidance here except to the extent that its actions again suggest the MCCA's text does not require a uniform practice.

18

Finally, we view the Supreme Court's recent discussion of the MCCA in

Blumer particularly informative.  In Blumer, the Court considered significant MCCA's

failure to clearly articulate how income should be calculated for the purpose of

determining an institutionalized spouse's Medicaid eligibility.  The Court noted the

MCCA's legislative history and the practice by state and federal agencies conclusively

suggested that when Congress enacted the "Medicaid statute, in which the MCCA is

implanted," Congress intended "to advance cooperative federalism."  Blumer, 534 U.S. at

496.  The Court explained:

> When interpreting other statutes so structured, *we have not been reluctant to
> leave a range of permissible choices to the States, at least where the
> superintending federal agency has concluded that such latitude is consistent
> with the statute's aims*.  In Batterton v. Francis, 432 U.S. 416, 429 (1977),
> for example, we upheld a regulation promulgated by the Secretary of
> Health, Education, and Welfare affording the States discretion in the
> implementation of the Aid to Families with Dependent Children (AFDC)
> unemployed parent program.  The challenged regulation allowed States to
> cover or exclude from coverage persons whose unemployment resulted
> from participation in a labor dispute or whose conduct would disqualify
> them for benefits under the State's compensation law.  Noting that the
> AFDC program involved the "concept of cooperative federalism," id. at
> 431, we concluded that the Secretary had the authority to "recognize some
> local options in determining . . . eligibility," id. at 430.  Similarly, in
> Lukhard v. Reed, 481 U.S. 368 (1987), a plurality of this Court concluded
> that Virginia's policy of treating personal injury awards as income rather
> than resources under the AFDC program was reasonable and consistent
> with federal law, see id., at 377-381.  The superintending federal agency,
> the plurality pointed out, had for many years permitted Virginia's choice
> while allowing other States to treat such awards as resources.  Id. at 378.

534 U.S. at 495-496 (emphasis added).  The Court held that because the MCCA did not

19

specifically address how a couple's income should be calculated, Wisconsin's methodology, although not explicitly prohibited or permitted by the MCCA, was "a permissible means of implementing the Act." Id. at 495. The Court added, "we note that the leeway for state choices urged by both Wisconsin and the United States is characteristic of Medicaid." Id.

We reach the same conclusion based on the MCCA's failure to explicitly require or prohibit inclusion of retirement accounts in calculating a couple's total resources. By not taking a clear position on the status of retirement accounts, Congress intended, through cooperative federalism, to leave resolution of this complicated matter to the states. See Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 289 (1981) (discussing "cooperative federalism" in the context of the Surface Mining Act and noting such a system "allows the States, within limits established by federal minimum standards, to enact and administer their own regulatory programs, structured to meet their own particular needs"). We therefore conclude the new Colorado rule which includes self-funded retirement accounts in the computation of a couple's resources does not violate the MCCA.

*Did Colorado's redetermination of the IRA as a resource violate the MCCA?*

The Sellers contend the decision to classify Mr. Sellers' IRA as a "resource" nearly five years after Mrs. Sellers was initially determined to be eligible for Medicaid violates § 1396r-5(c)(4)'s plain text. "During the continuous period in which an

institutionalized spouse is in an institution and after the month in which an institutionalized spouse is determined to be eligible for benefits under this subchapter, *no resources of the community spouse shall be deemed available to the institutionalized spouse*." 42 U.S.C. § 1396r-5(c)(4). The district court concluded § 1396r-5(c)(4) did not apply to the facts at bar because it merely "prohibits the state from taking resources *allocated to the community spouse* and later deeming those resources available to the institutionalized spouse." Aplt. App. at 78 (emphasis added). Since Mr. Sellers' retirement funds previously had not been allocated to either spouse, the court reasoned they were not "resources" at the time of Mrs. Sellers' initial Medicaid eligibility determination and, therefore, were available for inclusion in Mrs. Sellers' annual eligibility redetermination.

We again begin our analysis with the text of the MCCA. Barnhart, 534 U.S. at 450. Section 1396r-5(c)(4) plainly states that, after the initial one-month eligibility period, "no resources of the community spouse shall be deemed available to the institutionalized spouse." As we have noted, neither the MCCA nor the Medicaid Act explicitly addresses whether retirement accounts are "income" or "resources." Nevertheless, for several reasons, we do not interpret this lack of clarity as permitting a state to reclassify assets a couple possessed at the time the state made its initial eligibility determination.

When Congress stated in § 1396r-5(c)(4) that "no resources of the community

21

spouse shall be deemed available to the institutionalized spouse," it did not limit this prohibition to include only those resources "allocated" to either spouse at the time of the initial eligibility determination; nor did Congress limit such transfers to only those resources used to calculate the initial CSRA. The text provides no indication that Congress intended to protect only those assets a state initially classified as resources while leaving up for grabs assets which existed at the time the initial eligibility determination was made, but which a state later chooses to include in the definition of resources. Rather, it appears Congress intended that, at the time one spouse is institutionalized, all of the couple's existing assets should be classified as income or resources, and any resources of a community spouse not included in that initial classification are protected from future reclassification.

Our interpretation is buttressed by reading § 1396r-5(c)(4) in the context of § 1396r-5(c), which delineates the "Rules for treatment of resources" under the MCCA. Parts (1) and (2) of § 1396r-5(c) discuss the "Computation of spousal share at time of institutionalization" and "Attribution of resources at time of initial eligibility determination," respectively. §§ 1396r-5(c)(1)-(2). Part (2) clearly states that when the initial eligibility determination is made, "all the resources held by either the institutionalized spouse, community spouse, or both, shall be considered to be available to the institutionalized spouse." Id. (c)(2)(A). Parts (1) and (2) are broad, requiring inclusion of all of the community spouse's resources. The remaining parts of § 1396r-

22

5(c) provide exceptions and limitations.  Part (3) addresses certain cases where an institutionalized spouse should be eligible for Medicaid even if assets exceed the statutory eligibility cap.  Id. (c)(3).  Part (4) addresses the "Separate treatment of resources *after* eligibility for benefits [is] established" and sets out the rule that "[d]uring the continuous period in which an institutionalized spouse is in an institution . . . no resources of the community spouse shall be deemed available to the institutionalized spouse."  Id. (c)(4).  Part (5) defines "resources."  A plain reading of § 1396r-5 suggests Congress intended that resources be pooled in the initial eligibility determination, but analyzed separately after eligibility was established.

The relevant legislative history supports this interpretation.

> The attribution of resources into spousal shares, and the subsequent imposition of limits on the community spouse's shares, would occur only once, at the time of initial application. After the month in which an institutionalized spouse has met the resource eligibility standard and is determined to be eligible for benefits, no resources of the community spouse, regardless of value, would be considered available to the institutionalized spouse. Thus, if while the care of the institutionalized spouse is being paid for by Medicaid, the community spouse's countable resources grow to exceed the $48,000 initial limit, *the State would not be authorized to require the community spouse to apply any excess toward the cost of care of the institutionalized spouse*.

H.R. Rep. No. 100-105, 100th Cong., 1st Sess., at 71, reprinted in 1988 U.S.C.C.A.N. 857, 894.  Congress appears to have meant what it said: once the institutionalized spouse's eligibility is determined, the state is not authorized to take *any* resources belonging to the community spouse and deem them available to the institutionalized

23

spouse. See also Blumer, 534 U.S. at 482 n. 4 (noting "[o]nce the institutionalized spouse is determined to be eligible, no resources gained by the community spouse shall be deemed available to the institutionalized spouse").

Finally, we find it particularly persuasive that in this case the community spouse's assets never changed. In this regard, Colorado's reliance on 42 C.F.R. § 435.916(a), requiring states to "redetermine the eligibility of Medicaid recipients, with respect to circumstances that may change, at least every 12 months," is misplaced. Unlike a situation where a party acquires new wealth, the Sellers' circumstances have not changed. Moreover, this regulation directly conflicts with § 1396r-5(c)(4), which shields resources belonging to the community spouse from annual re-evaluation. Section 1396r-5(a)(1), which states that MCCA provisions supercede other parts of the Medicaid Act where in conflict, therefore requires us to disregard § 435.916(a).

## III.

Although we agree with the district court that the MCCA permits Colorado to classify self-funded retirement accounts as resources for purposes of determining an institutionalized spouse's Medicaid eligibility, we disagree with the court's conclusion regarding Colorado's reclassification of Mr. Sellers' IRA account. We REVERSE and REMAND to the district court for entry of summary judgment in favor of the Sellers.

24