John and Mary Jim RAMSEY v. DEPARTMENT OF
HUMAN SERVICES

89-56                                             783 S.W.2d 361

Supreme Court of Arkansas
Opinion delivered February 5, 1990

*Pulliam, Davis & Wright*, by: *Nelwyn Davis*, for appellant.

*James B. Barnhill*, Deputy General Counsel, for appellee Department of Human Services.

BILL E. ROSS, Special Justice. This is an appeal by the parents (Ramseys) of a juvenile who was admitted to Rivendale Hospital in Benton, pursuant to a Juvenile in Need of Supervision

(JINS) order. The appellee, Arkansas Department of Human Services (Department), denied retroactive Medicaid benefits following an administrative hearing. The circuit court reviewed and affirmed. On appeal, the Ramseys argue that the circuit court should have reversed what they claim is the Department's arbitrary application of its "spend-down" procedure in denying retroactive Medicaid benefits. We do not agree with the argument and affirm.

The Congress, in 1965, established the Medicaid Program, which is a medical assistance program for people "whose income and resources are insufficient to meet the costs of necessary care and services." 42 U.S.C. § 1396-1396k (Supp. II 1982); *Atkins* v. *Rivera*, 477 U.S. 154, 156 (1986). Medicaid benefits are provided automatically for the "categorically needy," persons who receive welfare payments under the Aid for Dependent Children (AFDC) and Supplemental Security Income (SSI) programs. If a state participates in the Medicaid program, it must provide coverage for the "categorically needy." 42 U.S.C. § 1396a (a)(10)(A) (Supp. II 1982).

Congress also enacted an optional program for the "working poor" who were deemed "medically needy." The "medically needy" become eligible for medicaid benefits when their income and assets are reduced by incurred medical expenses that reduce their income and assets below certain established levels. This then puts them in roughly the same position as the "categorically needy." Public Health, 42 C.F.R. §§ 435.301, 435.308 (1987); 42 U.S.C. § 1396a(a)(17) (Supp. II 1982). Arkansas has elected to include this optional plan under its State Medicaid Plan. Therefore, it must comply with the requirements imposed by the federal Medicaid statutes. *Atkins* v. *Rivera, supra*; 42 U.S.C. § 1396a, *supra*.

The Ramseys admitted the juvenile to Rivendale on February 12, 1987. The Pulaski County Probate Court entered a JINS order on February 27, 1987, stating that the placement was appropriate and should be continued. Rivendale undertook, with the parents' consent, the filing of a "medically needy" application for Medicaid. The application showed that the juvenile had no income. It also showed that a resource, in the form of a Merrill-Lynch account containing approximately $5,000.00, existed in

Mrs. Ramsey's maiden name as custodian for the juvenile. The Department's Saline County office received the application on March 9, 1987, and denied it on March 16, 1987. Denial was based on an initial determination that the Merrill-Lynch account was a resource available to the juvenile in excess of the Medicaid $1,800.00 resource eligibility limit. The parents were notified on March 23, 1987, and they immediately filed an appeal for an administrative hearing challenging the determination that the account was available to the juvenile.

Also on March 23, the Department's county office, at the Ramseys' request, made a written inquiry to the Department's Medicaid Section for further clarification of the resource status of the Merrill-Lynch account. On March 30, 1987, the Medicaid Section responded and stated that the account was still considered a resource available to the juvenile. On April 23, 1987, the Department recognized expenses paid from the Merrill-Lynch account that reduced it to the $1,800.00 resource eligibility limit. The juvenile's Medicaid eligibility was established effective as of May 1, 1987. Approximately $36,000.00 in medical expenses had been incurred between the juvenile's hospital admission in February and his effective Medicaid eligibility on May 1.

The Ramseys, in their March 23, 1987, request for an administrative hearing, challenged the availability of the Merrill-Lynch account to the juvenile. However, the principal issue at the July 30, 1987, administrative hearing was whether the Department should have applied the same "spend-down" procedure to the Merrill-Lynch resource account that was used by the Department in determining eligibility for "medically needy" applicants.

Under the "medically needy" procedure, applicants are permitted to "spend down" their excess income for medical expenses. The applicants are considered eligible for Medicaid while spending down their excess income. The policy objective is to assist the working poor by providing some Medicaid assistance after their medical expenses reduce available income to the Medicaid income eligibility limit.

On the other hand, the Department requires applicants with excess resources to reduce their resources to the resource eligibility limit of $1,800 by paying qualifying expenses. Eligibility is not

established, and Medicaid assistance is not provided at all, until the resource eligibility limit has been reached. The policy objective is to deny benefits to persons with resources until the applicant's wealth in hand is reduced to a certain eligibility limit by requiring the applicant to pay qualifying expenses.

The Ramseys claim that the Department acted arbitrarily by not establishing Medicaid eligibility and by permitting a "spend-down" of the Merrill-Lynch account to the $1,800.00 resource eligibility limit in the same manner that an applicant with excess income can become eligible by a "spend-down" to the income eligibility limit. Had the Department acted as the Ramseys claim it should have acted, Medicaid eligibility would have been established at the latest on, or shortly after, February 27, 1987, when the probate court entered its JINS order. Medicaid then would have covered all allowable medical expenses after the Merrill-Lynch account had been reduced to the $1,800.00 resource eligibility limit.

The record indicates, however, that on March 23, 1987, the Ramseys did contest the initial Department determination that the Merrill-Lynch account was a resource available to the juvenile and that they conceded the point in April 1987 by then making qualifying expenses to reduce the account to the $1,800.00 resource eligibility limit. Thus, the Ramseys, in effect, waived the opportunity to follow the Department's resource eligibility procedure at the outset by not immediately reducing the account in order to quickly establish Medicaid eligibility. Had they done so, they subsequently could have contested the availability of the Merrill-Lynch account to the juvenile and claimed reimbursement for the expenses made to reach the $1,800.00 resource eligibility limit.

Accordingly, since the Ramseys didn't reduce the resource account to the qualifying limit, the issue to be resolved is whether the Department is required by law to apply to the Ramseys' excess resources the same "spend-down" procedure that the Department applies to an applicant's excess income, which permits Medicaid eligibility during the "spend-down" to the income eligibility limit.

The question of different treatments by a state under the Equal Protection Clause covering "Economics and Social

Welfare classifications" turns on whether the state has a reasonable basis for its actions, and the state does not violate the clause simply because the classifications made by its laws are imperfect. *Dandridge* v. *Williams*, 397 U.S. 471 (1971).

The federal regulations that undergird the Arkansas Medicaid Plan and its implementing state policies and regulations provide separately for determining "medically needy" income eligibility, codified in Public Health, 42 C.F.R. §§ 435.831, 435.832 (1987), and for determining "medically needy" resource eligibility, codified in Public Health, 42 C.F.R. § 435.845 (1987). Similarly, the federal regulations governing "Optional Coverage of the Medically Needy," provide in Public Health, 42 C.F.R. § 435.301(a)(1)(ii) (1987) for the provision of Medicaid to individuals with excess income provided, ". . . [they] have incurred medical expenses at least equal to the difference between their income and the applicable income standard. . . ." There is no similar "spend-down" provision for resources in the Code immediately following Public Health, 42 C.F.R. § 435.301(a)(2) (1987) and in the sections cross-referenced therein.

There is one exception for a resource "spend-down" under the "Section 1634 Agreement" between Arkansas and the Social Security Administration. Employees' Benefits, 20 C.F.R. §§ 416.1240—416.1246 (1989). This exception applies only to individuals who meet all but the resource requirements for the receipt of Supplemental Security Income (SSI). These individuals have six months to dispose of non-liquid resources, with all or a portion of the proceeds to be applied to Medicaid assistance rendered during the six month period. 20 C.F.R. §§ 416.1240—416.1246, *supra*. The Ramseys' juvenile is not enumerated among the categories targeted for this exception. In any event, the Ramseys' Merrill-Lynch account is not a non-liquid resource.

The pertinent federal statutes and regulations and their application through the Arkansas State Medicaid Plan establish no authority in any category for a "spend-down" of excess resources that is similar or identical to the expressly authorized "spend-down" of excess income, with the exception of the inapplicable provision noted above.

■ On appeal, we give the evidence its strongest probative

force in favor of the ruling of the administrative agency. *Arkansas Dept. of Human Services* v. *Simes*, 281 Ark. 81, 661 S.W.2d 378 (1983).

The construction of a statute by an administrative agency should not be overturned unless it is clearly wrong, and the court will not substitute its judgment for that of an administrative agency unless the administrative agency's decision is "arbitrary and capricious." *Arkansas Contractors License Bd.* v. *Butlers Constr. Co., Inc. of Barling, Arkansas*, 295 Ark. 223, 748 S.W.2d 129 (1988); *Green* v. *Carder*, 282 Ark. 239, 667 S.W.2d 660 (1984).

On appeal, the Ramseys rely on the point that the Department acted arbitrarily in applying its resource "spend-down" policy in denying retroactive medical benefits that it approves in "medically needy" income cases. Administrative action may only be regarded as arbitrary when it is not supportable on any rational basis, and something more than mere error is necessary to meet the test. *First Nat'l Bank of Fayetteville* v. *Smith*, 508 F.2d 1371 (8th Cir. 1974), *cert. denied*, 421 U.S. 930 (1975). The party challenging an action under this standard must prove that it was a willfull and unreasoning action, without consideration and with a disregard of the facts or circumstances of the case. *Arkansas State Bd. of Nursing* v. *Long*, 8 Ark. App. 288, 651 S.W.2d 109 (1983).

The rationale behind treating resources and income differently is that income merely restores resources to their previous levels. It is accrued day by day in return for labor. On the other hand, resources in place, or acquired, are viewed as wealth in hand that increases the recipient's well-being. A rational basis, therefore, can be said to exist for this distinction in treating resources and income differently. *See LaMadrid* v. *Hegstrom*, 830 F.2d 1524 (9th Cir. 1987); *Dandridge* v. *Williams, supra.*

We find that the Department's construction of the pertinent authorities precludes a finding that it acted contrary to law. Accordingly, its action is rational and not willfull and unreasoning. Our required review of the entire record, as noted in *Alcohol Beverage Control* v. *R.C. Edwards Distrib. Co., Inc.*, 284 Ark. 336, 681 S.W. 2d 356 (1984), shows that, with regard to the facts and circumstances of this case, there is substantial evidence, as

well as a correct application of the law, to support the Department's decision to deny retroactive Medicaid benefits to the Ramseys' minor.

Affirmed.

HAYS, J., not participating.