Debbie Hopkins, Chair Child Care Facility Review Board P.O. Box 1437, Slot 626 Little Rock, AR 72201
Dear Ms. Hopkins:
This is in response to your request for an opinion on two questions concerning A.C.A. § 20-78-601 through -605 (Supp. 1995), involving background checks of child care facilities and employees. Your first question pertains to the required child maltreatment check. You note that the check is required during every license renewal. You state that the child care industry has a high turnover of employees and that depending on the hiring cycle and turnover, an employee could be checked upon hire and again only a month later when the facility reviews its license. Your specific question is:
 Do child care facilities have to repeat the child maltreatment check on every single employee at every single license renewal?
Your second question involves the required criminal records check. You have asked:
 Were current owners of child care facilities `grandfathered in' or must they also submit to a fingerprint check?
It must be concluded from the language of A.C.A. §§ 20-78-601 and -602 that the answer to your first question is "yes." Subsection (a)(2) of § 20-78-601 states:
 All employees or conditional employees shall be checked with the Arkansas Child Abuse Central Registry for reports of child maltreatment. All employees in a child care facility shall further be checked with the registry for reports of child maltreatment during every child care facility license renewal.
A.C.A. § 20-78-601(a)(2) (Supp. 1995) (emphasis added).
It is well-established that the first rule in interpreting a statute is to construe it just as it reads, giving words their ordinary and usually accepted meaning. See generally City of Ft. Smith v. Tate, 311 Ark. 405,844 S.W.2d 356 (1993); Brimer v. Arkansas Contractors Licensing Board,312 Ark. 401, 849 S.W.2d 948 (1993). A court will not resort to forced construction for the purpose of limiting or extending its meaning. Cityof NLR v. Montgomery, 261 Ark. 16, 546 S.W.2d 154 (1977).
Applying these precepts in this instance, it seems clear that the Central Registry check is required of all employees at every license renewal, notwithstanding the fact that some employees may have been hired, and therefore checked, just prior to the renewal. I cannot glean any evidence of legislative intent to authorize an exception in that case, and I do not believe a court would be willing to infer one from the current statutory language.
With regard to your second question, I assume that by "current owners" you mean those who were licensed to own or operate a child care facility when the legislation requiring criminal records checks was enacted. Although the answer to this question may be somewhat less clear, I believe the criminal records check requirement applies to those licensees when they seek renewal of their licenses. In response to your specific question, therefore, current owners were not "grandfathered in." They must also submit to a criminal records check when they apply for renewal of the license.
Section 20-78-602(a)(1) (Supp. 1995) states in relevant part that "[e]ach applicant for a license to own or operate a child care facility shall be required to apply . . . for a statewide criminal records check and a nationwide criminal records check. . . ." The requirement thus applies to "each applicant," and this language was continued from the original 1993 legislation. See Acts 1993, No. 1293, § 1.[1]
With regard, generally, to licensure, once granted a license continues in effect for two years or until revoked or suspended. A.C.A. § 20-78-210(c) (Supp. 1995). Application must be made for license renewal sixty days prior to the expiration of the license. See Part 104, No. 7 of the Minimum Licensing Requirements for Child Care Centers (PUB-002 (3-1-95)). A review of the Minimum Licensing Requirements (the standards incorporated into the rules of the Child Care Facility Licensing Review Board) indicates that the application process is essentially the same, regardless of whether the application is for a new license or for renewal of an existing license. The Minimum Licensing Requirements make little distinction between those who apply for initial licensure and those who apply for renewal. See, e.g., Minimum Licensing Requirements for Child Care Centers, Part 104, No. 3.a. (stating that "[e]ach applicant for a child care license (either a new applicant or an applicant for renewal of an existing license) shall submit . . . a licensee fee as follows. . . .")
It seems clear under the Minimum Licensing Requirements that a current owner (that is, one who was licensed when the criminal records check was enacted) who seeks license renewal is an "applicant." And it is my understanding that this reflects the administrative interpretation of the licensing requirements. This interpretation will, I believe, be upheld unless it is shown to be clearly wrong. See generally Arkansas State BankComm'r v. Bank of Marvel, 304 Ark. 602, 804 S.W.2d 692 (1991); Ramsey v.Dept. of Human Services, 301 Ark. 285, 783 S.W.2d 361 (1990).
A potential counter argument, based upon a 1995 amendment, should perhaps be noted in this regard. The Central Registry check provision (§20-78-601) was amended by Act 1280 of 1995 to provide that "[a]ll applicants for a license . . . shall be checked . . . for reports of child maltreatment upon application for the license and during every child carefacility license renewal." Acts 1995, No. 1280, § 7, codified at A.C.A. § 20-67-601(a)(1) (Supp. 1995) (emphasis added). This language regarding license renewal was not included in the provision governing criminal records checks (§ 20-78-602), perhaps suggesting that the term "applicant" in that provision does not encompass those applying for renewal of a license, e.g., those currently licensed.
While inclusion of the language in § 20-78-602 would be helpful in resolving any ambiguity, I cannot conclude that the 1995 amendment was intended to accord different treatment to Central Registry checks versus criminal records checks. The statute does not contain what is commonly referred to as a "grandfather clause" or a proviso exempting currently licensed owners or operators. And as noted above, the administrative regulations apply the term "applicant" to both new applicants and renewal applicants. Any ambiguity may be resolved by noting that the inclusion of language regarding "license renewal" simply serves to clarify and reinforce the fact that one seeking license renewal is still an "applicant." At the very least, the 1995 amendment does not, in my opinion, compel a finding that the administrative regulations are clearly wrong in applying the criminal records check requirement to those applying for renewal.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:EAW/cyh
[1] A 1995 amendment added the statewide records check requirement.See Acts 1995, No. 1280, § 7.