ARKANSAS DEPARTMENT OF HUMAN SERVICES *v.*
Curtis WELBORN and Christine Welborn

CA 98–890 987 S.W.2d 768

Court of Appeals of Arkansas
Division III
Opinion delivered April 7, 1999

*Elisabeth McGee,* Office of Chief Counsel, for appellant.

*Ronald W. Metcalf,* for appellees.

TERRY CRABTREE, Judge. This case arises from a state administrative hearing that found that the appellant, Arkansas Department of Human Services (DHS), could terminate a federal adoption subsidy, which had been payable to the appellees, Curtis and Christine Welborn. This appeal is brought in response to a decision of the Pulaski County Circuit Court reversing the administrative law judge's ruling. The circuit judge entered his order on April 6, 1998, finding that the hearing officer acted erroneously, without substantial evidence, and in an arbitrary and capricious manner in interpreting 42 U.S.C. § 673. On appeal, appellant argues that we should reverse the circuit judge's order. We disagree and affirm.

On December 6, 1993, appellees adopted two special-needs children through the Adoption Services Unit of the Department of Human Services in Arkansas: James, who was born August 8, 1982, and Thomas, who was born June 26, 1983. At that time, appellees signed an Adoption Assistance Agreement for Federal IV-E Funded Assistance, wherein they acknowledged the terms under which the federal government would provide funding to parents of special-needs adopted children pursuant to 42 U.S.C. § 673. Appellees renewed that agreement on December 6, 1994. This agreement remained effective until December 6, 1995, and provided payment to appellees of $4,050 annually for James and $4,200 annually for Thomas.

In December 1993 appellees, Thomas, and James, moved to Tampa, Florida. Approximately two years later, in October 1995, the boys were placed in a private Christian boarding school in Florida. In November 1995 the boys were placed in another hospital and then in the Children's Home of Tampa Bay. September 1995 was the last time either of the boys lived in appellees' home. Since then, the boys have been enrolled in and referred to various residential care facilities in Florida and remained there at the time this case was heard.

In March 1996 appellees filed a Petition to Terminate Parental Rights in Florida. No action was taken by the Florida court on appellees' petition and instead, on March 21, 1996, the Florida Department of Health and Rehabilitative Services (DHRS) took the two children into protective custody. In April 1996, DHRS filed a petition against appellees alleging that they refused any offer of services to assist the family, refused to take the children back into their home, and refused to pick up the children from the treatment facility. Appellees then entered into an agreement with DHRS to pay DHRS child support by assigning their federal subsidy check to Florida on a monthly basis. However, in April 1996, the Arkansas Division of Children and Family Services unilaterally terminated appellees' monthly federal IV-E maintenance

payments based on the agency's determination that appellees were no longer emotionally supporting Thomas or James.

Meanwhile, on October 18, 1996, appellees filed a Motion to Set Aside Adoption in the Chancery Court of Sebastian County, Arkansas. The motion was denied because the one-year statue of limitations for challenging adoption decrees in Arkansas had run.

On April 17, 1997, appellees requested an administrative hearing on the issue of termination of the adoption subsidy. The ALJ held the hearing, and on July 21, 1997, she issued her order upholding the agency's decision to terminate the adoption subsidy because appellees had "violated the terms of the Adoption Assistance Agreement and the federal statute relating to this issue when they emotionally and physically abandoned Thomas and James in Florida." However, the ALJ found that "[t]he placement of Thomas and James in a residential treatment facility did not, per se, disqualify the Welborns from receiving the assistance." Then, in July 1997, a state court in Florida found James and Thomas "dependent" under Florida law.

 A state agency's interpretation of federal law, as opposed to its findings of fact, is not entitled to deference. *Alexander v. Pathfinder, Inc.*, 906 F. Supp. 502 (E.D. Ark. 1995), *rev'd in part on other grounds*, 91 F.3d 59 (8th Cir. 1996); *see also DeLuca v. Hammons*, 927 F. Supp. 132 (S.D.N.Y. 1996). In this case, we review a question of law; therefore, we employ a *de novo* standard of review. *See Alexander, supra.*

The "Adoption Assistance Agreement for Federal IV-E Funded Assistance" reflects the terms of the federal statute. At issue is 42 U.S.C. § 673(a)(4), which provides in part:

> (A) no payment may be made to parents with respect to any child who has attained the age of eighteen (or, where the State determines that the child has a mental or physical handicap which warrants the continuation of assistance, the age of twenty-one),

and (B) *no payment may be made to parents with respect to any child if the State determines that the parents are no longer legally responsible for the support of the child or if the State determines that the child is no longer receiving any support from such parents.*

(Emphasis added.)

The ALJ reasoned that the term "support" in the above-quoted provision must mean "more than mere monetary payments" because "[t]o define the term otherwise would be redundant as to the legal responsibility issue." The ALJ found that the clause, "if the State determines that the child is no longer receiving any support from such parents," would be rendered meaningless unless the word "support" was read to include emotional as well as financial support. We find this interpretation to be clear error.

A comparison of subsection (A) and subsection (B) exposes the fallacy in this reasoning. Subsection (A), in essence, says that assistance payments stop when the child is eighteen unless the child is handicapped; parents of handicapped children may receive assistance payments until the child is twenty-one. This dovetails with subsection (B), which says that support stops when the parents are no longer legally responsible for supporting the child, or when the parents are no longer actually supporting the child. Taking subsection (A) by itself, it could be argued that parents of handicapped children should receive assistance payments until the child is twenty-one just because the child is handicapped. Subsection (B) says that having a handicapped child over eighteen is not enough; the parents, although not legally required to support the child, must actually support the child to qualify for assistance payments. This language, by defining and restricting the application of subsection (A), serves an important purpose and consequently is not "redundant as to the legal responsibility issue." The ALJ's decision was based on faulty reasoning and an illogical enlargement of the scope of the statute.

■ The purpose of this statute is to provide funds, including monetary supplements for parents of special-needs adopted children. This is evidenced not only through the statute's title, "Adoption Assistance Program," but also within the text of the statute. Consequently, we do not believe that the language "no payment may be made to parents . . . if the State determines that the child is no longer receiving any support from such parents" means that the State may terminate the subsidy if the parents fail to provide emotional support to the children.

■ ■ We recognize that the ALJ found appellees had no intention of reuniting with the two boys. The ALJ specifically stated in her final order:

> It is clear from the Welborns' answers to the Interrogatories as well as from Mr. Welborn's testimony at the administrative hearing that, the Welborns do not "have any plans for a future relationship with either Thomas or James." The Welborns have not spoken to Thomas or James since March 1996.

However, this finding and other similar findings made by the ALJ matter not. The federal statute does not condition the continuation of subsidy payments upon a State's determination of whether parents provide emotional support for special-needs adopted children.

■ Based upon our *de novo* review of the question of law presented, we are convinced that the ALJ erred in her interpretation of 42 U.S.C. § 673.

Affirmed.

ROBBINS, C.J., and PITTMAN, J., agree.

## SUPPLEMENTAL OPINION ON DENIAL
## OF REHEARING

June 2, 1999

*D. Franklin Arey, III*, Chief Counsel; *Elisabeth McGee*, Deputy Counsel, for appellant.

*Ronald W. Metcalf*, for appellees.

TERRY CRABTREE, Judge. In its petition for rehearing, the appellant, Arkansas Department of Human Services, asserts that we applied the wrong standard of review in reaching our decision in *Arkansas Dept. of Human Services v. Welborn*, 66 Ark. App. 122, 987 S.W.2d 768 (1999). Appellant claims that we improperly applied a *de novo* standard of review rather than a "clearly wrong" standard of review as in *Ramsey v. Dept. of Human Services*, 301 Ark. 285, 783 S.W.2d 361 (1990).

Appellant's reliance on *Ramsey* is misplaced. We are not bound by the standard of review that the court applied in *Ramsey* because in that case, the administrative agency only interpreted state law. In the case at bar, the administrative law judge

attempted to interpret federal law. For that reason, *Ramsey* is distinguishable.

■ Even if appellant was correct in its argument that we should apply the "clearly wrong" standard of review, the argument would have no effect because we expressly found that the ALJ clearly erred when we stated, "We find this interpretation to be *clear error.*" *Welborn*, 66 Ark. App. 122, 125, 987 S.W.2d 768, 770 (emphasis added).

The petition for rehearing is denied