# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### AUGUST 3, 2004 Session

## FRED H. WRIGHT, Ph.D v. TENNESSEE BOARD OF EXAMINERS IN PSYCHOLOGY

### Direct Appeal from the Chancery Court for Davidson County
### No. 02-3172-1     Irvin H. Kilcrease, Jr., Chancellor

---

### No. M2003-01654-COA-R3-CV - Filed December 28, 2004

---

The Tennessee Board of Examiners in Psychology received a complaint from the patient of a psychologist alleging the psychologist breached the ethical duty of confidentiality by disclosing information to the patient's sister. During the course of the investigation, the psychologist revealed that he had disclosed confidential information about the same patient to another psychologist romantically involved with the patient. The board filed charges against the psychologist alleging violations of the ethical rules governing confidentiality and documentation of therapy. Following an administrative hearing, the board placed the psychologist's license on probation for two years subject to two conditions: (1) he complete twenty hours of continuing education training and (2) his practice be supervised during the two year probationary period by another psychologist. In addition, the board assessed a $1,000.00 civil penalty against the psychologist. The psychologist appealed the board's decision to the Chancery Court of Davidson County which affirmed the board's decision. The psychologist appealed to this Court. We affirm.

### Tenn. R. App. P.; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Erskine P. Mabee, Chattanooga, TN, for Appellant

Paul G. Summers, Attorney General & Reporter, Sue A. Sheldon, Senior Counsel, Nashville, TN, for Appellee

**OPINION**

**Factual Background and Procedural History**

Fred H. Wright, Ph.D. ("Appellant" or "Dr. Wright") has been a licensed psychologist practicing in the State of Tennessee (the "State") since May of 1973, with a majority of his professional career spent practicing in Chattanooga, Tennessee. Except for the present action, the State has never taken disciplinary action against Dr. Wright or his license.

Dr. Wright began treating C.W.B.[1] in 1976 following her release from a mental health facility. When C.W.B. came into Dr. Wright's care, she presented mental health problems related to depression, suicidal ideation, and violent eruptions against her husband. During the course of treatment, Dr. Wright tried to meet with C.W.B. on a weekly basis, but their visits were not consistent because C.W.B. lived outside Tennessee. Dr. Wright treated C.W.B. from 1976 until 1997, approximately twenty-one years, which he described as the longest therapeutic relationship he ever had with a patient.

In November 1997, C.W.B. abruptly ended her relationship with Dr. Wright. Just prior to ending their relationship, C.W.B. learned that Dr. Wright received a telephone call from C.W.B.'s sister asking his opinion as to whether C.W.B. would qualify for Social Security disability benefits. C.W.B. and her sister had a relationship which Dr. Wright described as "terrible, hostile." Dr. Wright conveyed to C.W.B.'s sister that he felt C.W.B. could qualify for disability benefits and commented on C.W.B.'s psychological and physical status. Dr. Wright admits that C.W.B. did not give him prior authorization to reveal to the sister that he was C.W.B.'s treating psychologist or to discuss her treatment with the sister. In fact, Dr. Wright received telephone calls from C.W.B.'s mother during the course of treating C.W.B., but he refused to reveal any information to the mother. According to Dr. Wright, he felt that, by speaking with C.W.B.'s sister, he could ameliorate any animosity between them.

After learning of Dr. Wright's conversation with her sister, C.W.B. filed a complaint against Dr. Wright with the Tennessee Board of Examiners in Psychology (the "Board"). During the course of the Board's investigation, Dr. Wright voluntarily disclosed to the investigator that he had previously discussed C.W.B. with a fellow psychologist as well. Apparently C.W.B. had been engaged in a romantic relationship with another psychologist, Dr. Jim Pruett ("Dr. Pruett"). Dr. Pruett called Dr. Wright and asked, "Is she capable of killing me?" Dr. Wright assured Dr. Pruett that he did not feel C.W.B. was capable of murder.

During the course of the investigation, the Board's investigator also arrived at the conclusion that Dr. Wright had failed to maintain adequate records on C.W.B. during the course of her

---

[1] For purposes of this appeal we will refer to the patient by her initials in order to protect her confidentiality and privacy.

treatment.  On May 2, 2002, the Tennessee Department of Health (the "Department") filed a Notice of Charges and Memorandum for Assessment of Civil Penalties against Dr. Wright.  The Department alleged that Dr. Wright's conduct constituted violations of the Tennessee Psychology Practice Act, codified at section 63-11-101 *et seq.* of the Tennessee Code, as well as specific rules governing confidentiality.

On August 7, 2002, the Board conducted a hearing pursuant to the Tennessee Uniform Administrative Procedures Act ("UAPA"), codified at section 4-5-101 *et seq.* of the Tennessee Code.[2]  Dr. Wright appeared before the Board *pro se*.   At the administrative hearing, Dr. Wright freely admitted that, by speaking with the sister and fellow psychologist regarding C.W.B., he breached the ethical rules governing psychologist/patient confidentiality.  In addition, Dr. Wright freely admitted that he failed to satisfy the requirements in the psychology profession regarding documentation of therapy in the case of C.W.B.  In fact, Dr. Wright also stated that he presently treats thirty-five to forty patients, and he admitted that, over the past twenty-one years, he failed to adequately document their therapy as well.

At the conclusion of the administrative hearing, the Board issued an order containing its findings of fact, conclusions of law, and policy statement.  The Board's order contained, in relevant part, the following sanctions:

> 1.  Respondent's license to practice as a psychologist in the State of Tennessee is hereby placed on PROBATION for a period of two (2) years, subject to the following terms and conditions:
>
> (a)  <u>Supervision</u>.  Within thirty (30) days from the date of the entry of this Order, Respondent must provide to a representative of the Board the name and *curriculum vitae* of a supervising psychologist ("Supervisor"). . . .
>
> The Supervisor shall monitor Respondent's practice with respect to documentation practices and ethical decision making.  Any and all costs relating to this supervision shall be the sole responsibility of the Respondent.
>
> Respondent shall submit or cause to be submitted reports from the Supervisor regarding Respondent's performance by June 30th and December 31st of each year.  Failure

---

[2] The Tennessee Psychology Practice Act provides that "[a]ll proceedings for disciplinary action against a licensee or certified person under this chapter shall be conducted in accordance with the Uniform Administrative Procedures Act, compiled in title 4, chapter 5."  TENN. CODE ANN. § 63-11-216 (2003).

> to submit or have such reports submitted in a timely manner shall be considered a violation of this Order.
>
> . . . .
>
> The foregoing requirement for supervision of Respondent's practice shall remain in effect for the duration of the probationary period of two (2) years under this Order.
>
> (b)  Continuing education.  Within the two (2) year probationary period, Respondent shall complete twenty (20) hours of continuing education in the areas of ethics and professional risk management.
>
> 2.  Respondent is hereby Ordered to pay two (2) Type B Civil Penalties in the amount of Five Hundred Dollars ($500.00), for a total of One Thousand Dollars ($1,000.00) in civil penalties, representing two (2) violations of the Tennessee Psychology Practice Act or regulations or both in such a manner as to impact directly on the care of patients or the public. . . .

Dr. Wright subsequently filed, pursuant to section 4-5-322 of the Tennessee Code, a Petition for Review and for Stay of Final Order in the Chancery Court of Davidson County.[3] Dr. Wright alleged that the Board violated section 4-5-322(h)(3) through (5) of the Tennessee Code by rendering an arbitrary and capricious decision not supported by the evidence, as well as section 4-5-314 of the Tennessee Code by failing to make specific findings of fact, failing to set forth specific conclusions of law, and failing to identify an independent policy reason for both.  On May 12, 2003, the chancery court issued a Memorandum Opinion, which it later incorporated into a Final Order, affirming the decision of the Board.

Dr. Wright, pursuant to section 4-5-323(a) of the Tennessee Code, appealed the decision of the chancery court to this Court, presenting the follow issues, as we perceive them, for our review:

---

[3] The chancellor entered an order on November 21, 2002, pursuant to section 4-5-322(c) of the Tennessee Code, staying the Board's decision as to the probation of Dr. Wright's license, the supervision of Dr. Wright's practice, and the $1,000.00 civil penalty.  Following the issuance of the chancery court's order, Dr. Wright filed a motion, pursuant to Rule 62 of the Tennessee Rules of Civil Procedure, asking the chancellor to stay enforcement of the Board's sanctions. Despite the Board's objection, the chancery court entered an order continuing the stay from its prior ruling with the condition that Dr. Wright post a bond in the amount of $1,000.00 to be forfeited in the event of future ethical violations. The chancery court did not stay the requirement that Dr. Wright complete twenty hours of continuing education.  At the time this case was heard on appeal, Dr. Wright had completed the continuing education requirement.

I.      Whether the Tennessee Board of Examiners in Psychology rendered an arbitrary and capricious decision, characterized by an abuse of discretion, by handing down sanctions against Dr. Wright that were clearly excessive given his unblemished record as a psychologist practicing in the State of Tennessee;

II.     Whether the decision reached by the Tennessee Board of Examiners in Psychology is supported by substantial and material evidence given that the patient did not testify at the hearing, and the administrative panel did not adequately discuss the factors set forth in Tenn. Comp. R. & Reg. 1180-1-.10 (2002);

III.    Whether the Tennessee Board of Examiners in Psychology failed to adequately identify independent policy reasons for its findings of fact and conclusions of law and the sanctions imposed against Dr. Wright; and

IV.     Whether the proceedings before the administrative panel were unlawful because a portion of the proceedings was held outside the presence of Dr. Wright and was not recorded.

For the reasons set forth herein, we affirm.

## Standard of Review

"The scope of review in the trial court of an order of an administrative agency is defined in [section 4-5-322(h) of the Tennessee Code]," *Metro. Gov't of Nashville & Davidson County v. Shacklett*, 554 S.W.2d 601, 604 (Tenn. 1977), which provides:

> (h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>       (1) In violation of constitutional or statutory provisions;
>       (2) In excess of the statutory authority of the agency;
>       (3) Made upon unlawful procedure;
>       (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>       (5) Unsupported by evidence which is both substantial and material in the light of the entire record.
> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h) (2003). The statute makes clear that judicial review of the agency's decision is not *de novo* in the chancery court. *Shacklett*, 554 S.W.2d at 604. The scope of review in this Court is the same as in the chancery court, and we must review the case under the same

statutory criteria. *Humana of Tenn. v. Tenn. Health Facilities Comm'n*, 551 S.W.2d 664, 668 (Tenn. 1977); *see also Mosley v. Tenn. Dep't of Commerce and Ins.*, No. M2003-01998-COA-R3-CV, 2004 Tenn. App. LEXIS 784, at *19 (Tenn. Ct. App. Nov. 22, 2004) (citation omitted); *Estate of Street v. State Bd. of Equalization*, 812 S.W.2d 583, 585 (Tenn. Ct. App. 1990) (citations omitted). "Our review of a trial court's decision with respect to agency findings is essentially a determination of whether the trial court correctly applied the standard of review set forth [in section 4-5-322(h) of the Tennessee Code]." *Wilson v. Univ. of Tenn. at Chattanooga*, No. M2000-02573-COA-R3-CV, 2001 Tenn. App. LEXIS 942, at *10–11 (Tenn. Ct. App. Dec. 28, 2001).

### The Board's Selection of Sanctions Against Dr. Wright

We begin with Dr. Wright's argument that the sanctions imposed by the Board are arbitrary and capricious, as well as clearly excessive, in light of the facts presented to the Board. Dr. Wright points to his more than forty years of professional practice without a disciplinary infraction related to confidentiality until C.W.B. filed the complaint at issue with the Board. Dr. Wright characterizes his breach of confidentiality in regard to C.W.B.'s sister as a "spur of the moment response" that was "meant to allay some of the fears and animosity of the family situation." At the hearing before the Board, Dr. Wright readily admitted to the two breaches of confidentiality regarding C.W.B., but on appeal he contends that the sanctions imposed by the Board are not warranted given the following facts: (1) there has been no showing of continuous ethical violations, (2) there is no history of sustained complaints for similar violations, (3) there is no evidence that such conduct will continue in the future, and (4) since the violations occurred in 1997, there have been no subsequent ethical violations of any kind.

In reviewing the Board's decision, this Court "*shall not* substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Tenn. Code Ann. § 4-5-322(h)(5) (2003) (emphasis added). However, "agency decisions with adequate evidentiary support may still be arbitrary and capricious if caused by a clear error in judgment." *Jackson Mobilphone Co., Inc. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 110 (Tenn. Ct. App. 1993). In determining whether the Board's decision in this case was "arbitrary and capricious," we are mindful that:

> A reviewing court should not apply Tenn. Code Ann. § 4-5-322(h)(4)'s "arbitrary and capricious" standard of review mechanically. In its broadest sense, the standard requires the court to determine whether the administrative agency has made a clear error in judgment. *American Paper Inst. v. American Elec. Power Serv. Corp.*, 461 U.S. 402, 413, 103 S.Ct. 1921, 1928, 76 L.Ed.2d 22 (1983); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136 (1971). An arbitrary decision is one that is not based on any course of reasoning or exercise of judgment, *State ex rel. Nixon v. McCanless*, 176 Tenn. 352, 354, 141 S.W.2d 885, 886 (1940), or one that disregards the facts or circumstances of the case without some basis that would lead

a reasonable person to reach the same conclusion. *Wagner v. City of Omaha*, 236 Neb. 843, 464 N.W.2d 175, 180 (1991); *Ramsey v. Department of Human Servs.*, 301 Ark. 285, 783 S.W.2d 361, 364 (1990).

*Id*. at 110–11.

The Board concluded that Dr. Wright violated section 63-11-215(b)(1) of the Tennessee Code by engaging in "unprofessional, dishonorable, and unethical conduct." Tenn. Code Ann. § 63-11-215(b)(1) (2003). In addition, the Board found that Dr. Wright violated the following ethical rules governing the psychology profession:

> (1) General Standards. These general standards are applicable to the professional and scientific activities of all licensees or certificate holders.
>
> . . . .
>
> (w) Documentation of professional and scientific work.
> > 1. Licensees or certificate holders appropriately document their professional and scientific work in order to facilitate provisions of services later by them or by other professionals, to ensure accountability and to meet other requirements of institutions or the law.
>
> . . . .
>
> (4) Privacy and confidentiality. These standards are potentially applicable to the professional and scientific activities of all licensees and certificate holders.
>
> . . . .
>
> (b) Maintaining confidentiality. Licensees or certificate holders have a primary obligation and take reasonable precautions to respect the confidentiality rights of those with whom they work or consult, recognizing that confidentiality may be established by law, institutional rules or professional or scientific relationships.

Tenn. Comp. R. & Reg. 1180-1-.09 (2002).

This Court extends substantial deference to the selection of an appropriate sanction by an agency charged with the regulation of professional conduct. *See McClellan v. Bd. of Regents of State Univ.*, 921 S.W.2d 684, 693 (Tenn. 1996) (stating that "[t]he appropriate remedy is peculiarly within the discretion of the [agency]"). The legislature vested the Board with the power to:

> (1) Deny an application for a license or certificate to any applicant;
> (2) Permanently or temporarily withhold issuance of a license or certificate;
> (3) Suspend, limit or restrict a previously issued license or certificate for such time and in such a manner as the board may determine;
> (4) Reprimand or take such action in relation to disciplining an applicant or licensee or certified person as the board in its discretion may deem proper; or
> (5) Permanently revoke a license or certificate.

Tenn. Code Ann. § 63-11-215(a) (2003). The scope of our review of the sanctions selected by the Board in this case can be stated as follows:

> The general rule that the courts will not ordinarily review the exercise of discretion entrusted to administrative bodies applies with respect to various discretionary acts of administrative bodies, such as in connection with licenses, permits, or certificates.
>
> Judicial review of the imposition of sanctions, including the assessment of penalties, by an administrative agency exercising discretionary power, extends, and is limited to, the determination of whether there has been an abuse of discretion, and whether the agency has made an allowable judgment in its choice of remedy. The court may not interfere with the sanction or penalty, or set it aside, unless there has been an abuse of discretion, it is unwarranted in law or without justification in fact, or the penalty is so clearly disproportionate to the offense or completely inequitable in the light of the surrounding circumstances as to constitute an abuse of discretion, or be shocking to the sense of fairness. Since it is the responsibility of the agency and not of the court to impose a sanction or assess a penalty, the court should not substitute another one for that imposed by the agency which is within the allowable limits of the statute.

73A C.J.S. *Public Administrative Law and Procedure* § 417 (2004); *see also Woodard v. U.S.*, 725 F.2d 1072, 1077 (6th Cir. 1984).

At the close of the administrative hearing, the Board engaged in a lengthy discussion of the appropriate penalty for Dr. Wright's conduct, particularly regarding the form of supervision to

impose upon Dr. Wright. It is true, as Dr. Wright points out, that during their deliberations one of the Board members noted the isolated nature of the alleged violations. However, the Board members also expressed concerns over the seriousness of the ethical breaches and the apparent inability on Dr. Wright's part to recognize appropriate professional boundaries with his patients. Some board members did not feel the breaches of confidentiality were "spur of the moment incidences," and they questioned Dr. Wright's approach to the confidentiality and documentation rules governing the profession. Regarding documentation of therapy sessions, Dr. Wright acknowledged that the purpose behind the documentation rule is to allow another psychologist to pick up a patient's therapy where he left off in the event he could no longer continue therapy. However, Dr. Wright freely admitted at the hearing to only taking four pages of notes over the twenty-one year period he treated C.W.B. In addition, Dr. Wright admitted that he inadequately documented the progression of therapy for his other patients as well, stating that felt he knew them well enough. One board member expressed concerns that these statements by Dr. Wright evidenced a recurring problem indicating that perhaps Dr. Wright did not understand the need for proper documentation of therapy. After reviewing the record, we cannot say that the Board's choice of sanctions was arbitrary and capricious or outside the range of acceptable sanctions under section 63-11-215(a) of the Tennessee Code for conduct of this nature. Accordingly, we affirm the chancery court's ruling in that regard.

### The Board's Assessment of a Monetary Penalty

Next, Dr. Wright argues that the Board's decision regarding the monetary penalties is not supported by substantial and material evidence. The general rules governing the psychology profession provide, in relevant part, as follows:

> In assessing the civil penalties pursuant to these rules the Board may consider the following factors:
> (i)     Whether the amount imposed will be a substantial economic deterrent to the violator;
> (ii)    The circumstances leading to the violation;
> (iii)   The severity of the violation and the risk of harm to the public;
> (iv)    The economic benefits gained by the violator as a result of non-compliance; and
> (v)     The interest of the public.

Tenn. Comp. R. & Reg. 1180-1-.10(3)(d) (2002). In support of his position, Dr. Wright points to the absence of any testimony by C.W.B. at the hearing regarding harm caused to her personally by his actions, discussion by some of the Board members during their deliberations about the lack of such proof, and the discussion by the Board members during deliberations concerning where the money paid by Dr. Wright would eventually end up.

The Board, pursuant to section 63-1-134 of the Tennessee Code, "may assess a civil penalty against [a licensee] in an amount not to exceed one thousand dollars ($1,000) for each separate

violation of a statute, rule or order pertaining to such board, commission or agency." Tenn. Code Ann. § 63-1-134(a) (2003). This penalty shall be assessed in accordance with the schedule established by the Board. Tenn. Code Ann. § 63-1-134(b) (2003). The schedule provides that the Board may impose a "Type B" civil penalty "whenever the Board finds the person required to be licensed . . . is guilty of a violation of the Psychology Act or rules promulgated pursuant thereto in such a manner as to impact directly on the care of patients or the public." Tenn. Comp. R. & Reg. 1180-1-.10(3)(b) (2002). "'Type B' civil penalties may be assessed in the amount of not less than one hundred dollars ($100) nor more than five hundred dollars ($500)." Tenn. Comp. R. & Reg. 1180-1-.10(3)(c) (2002).

In determining whether there existed substantial and material evidence to support the Board's decision, we are mindful that:

> [A] reviewing court should not apply Tenn.Code Ann. § 4-5-322(h)(5)'s "substantial and material evidence" test mechanically. Instead, the court should review the record carefully to determine whether the administrative agency's decision is supported by "such relevant evidence as a rational mind might accept to support a rational conclusion." *Clay County Manor v. State Dep't of Health & Environment*, 849 S.W.2d 755, 759 (Tenn. 1993); *Southern Ry. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984). The court need not reweigh the evidence, *Humana of Tennessee v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 667 (Tenn. 1977), and the agency's decision need not be supported by a preponderance of the evidence. *Street v. State Bd. of Equalization*, 812 S.W.2d 583, 585 (Tenn.App. 1990). The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed. *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn.App. 1988).

*Jackson Mobilphone Co., Inc. v. Tenn. Pub. Serv. Comm'n*, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993).

At the outset, we note that the Board, during its deliberations, originally considered assessing a $2,000.00 penalty against Dr. Wright. The applicable rule at issue in this case merely states that the board "*may* consider the following factors." *See* Tenn. Comp. R. & Reg. 1180-1-.10(3)(d)3 (2002) (emphasis added). The record of the hearing before the Board does reveal that, during their deliberations, some Board Members expressed a reluctance to assess a civil penalty. However, during this discussion the Board members also went through every factor listed in the applicable rule. Despite their initial reluctance, the Board members reached a consensus in assessing two Type B civil penalties against Dr. Wright in the amount of $500.00 each. Regarding the lack of testimony by C.W.B., we note that the applicable rule does not list harm to a patient as a factor for consideration. *See* Tenn. Comp. R. & Reg. 1180-1-.10(3)(d)3 (2002). Even if such harm were a

-10-

factor to be considered when assessing a civil penalty, we find that Dr. Wright presented sufficient evidence to support a fine when he testified as follows:

> Q.    You would agree with me that breaching confidentiality for one of your patients that send them into a rage for two years would qualify as harm; would you not?
>
> A.    Yes.  That was a mistake in judgment on my part.
>
> . . . .
>
> Q.    In this letter — . . . In this first paragraph you appear to be discussing the breach of confidentiality with the sister.  And the last sentence of this paragraph says: "I still don't know what is so infuriating about that or what harm was done."
>
> A.    And I still don't know.  If anybody knows, please tell me because I can't imagine — I have had almost five years to think about this — and I still can't imagine any harm that was done other than I admit, certainly, to the patient but not, vis-a-vis the wider world.
>
> . . . .
>
> Q.    And you're looking forward to the feedback, but you believe that these offenses that we're about today are benign, and you still believe that?
>
> A.    Vis-a-vis the wider world.  It certainly was not benign to the patient for which I deeply regret.

Based upon our review of the administrative record, we affirm the chancery court's determination that there existed substantial and material evidence to support the Board's assessment of a monetary penalty against Dr. Wright.

### Policy Reasons for the Board's Decision

In his third issue, Dr. Wright contends that the Board, in its haste to depart for the day, merely made a perfunctory recitation of a boilerplate policy justification for its decision when it stated:

> Dr. Whelan:    Abstentions, which I assume there's not.  The Chair will vote for the motion meaning that the motion carries.  So they are the penalties.  Then the final point is the policy or the justification for taking this action, and I will state the policy of the Board.  We take this action in order to promote the protection of the citizens of Tennessee.  And I believe now we are concluded with our business in this case.

-11-

Dr. Wright argues that this demonstrates the Board's failure to consider the seriousness of their findings and constitutes additional evidence that the actions of the Board are arbitrary and capricious.

Section 4-5-314(c) of the Tennessee Code requires an agency rendering a final order to include a policy justification in the order for the action taken. Tenn. Code Ann. § 4-5-314(c) (2003). "'Policy reasons' are not findings of fact, but statements of the reasons for the action taken by the Board as a result of the facts as found." *Slatton v. Tenn. State Bd. of Architectural & Eng'g Exam'rs*, No. 88-48-II, 1988 Tenn. App. LEXIS 452, at *7 (Tenn. Ct. App. July 20, 1988). "The purpose of section 4-5-314(c) is to enable the trier of fact to determine the basis for which the administrative agency reached its decision, thereby safeguarding against arbitrary or untenable conclusions." *Southwest Motor Freight, Inc. v. Dep't of Commerce & Ins.*, No. 01A01-9403-CH-00119, 1994 Tenn. App. LEXIS 742, at *11 (Tenn. Ct. App. Dec. 16, 1994). "The foregoing is not a mere technicality but is an absolute necessity without which judicial review would be impossible." *Levy v. State Bd. of Examiners for Speech Pathology & Audiology*, 553 S.W.2d 909, 911 (Tenn. 1977); *see also CF Indus. v. Tenn. Pub. Serv. Comm'n*, 599 S.W.2d 536, 541 (Tenn. 1980).

In this case we are not dealing with the absence of a policy justification for an agency's decision but whether the policy justification given is adequate under the statute. In the final order, the Board provided the following policy justification: "The Tennessee Board of Examiners in Psychology makes this decision and takes this action in order to enforce the statutory laws and rules governing the professional practice of Psychology in the State of Tennessee and in order to protect the health, safety and welfare of the citizens of the State of Tennessee." The applicable statute only requires that the administrative agency include its policy reasons in the order, and we find nothing in the statute requiring a policy statement to take a particular form. *See* Tenn. Code Ann. § 4-5-314(c) (2003). In fact, this Court has stated that:

> It is not improper for either party or counsel for either party to suggest or even urge upon an administrative agency the merits of a particular policy or reasons why a particular decision should be made. If the suggestion is accepted, it becomes a part of the decision of the Board. If correct, it is not rendered incorrect by its origin. If incorrect and not accepted, its offer does not invalidate the decision if otherwise correct.

*Slatton*, 1988 Tenn. App. LEXIS 452, at *6–7.

Our review of the administrative record reveals the policy statement made by the Board was more than a perfunctory boilerplate statement as suggested by Dr. Wright. The record contains several instances where the Board members discussed the need to send a clear message to practitioners and the public that maintaining confidentiality is important in the psychology profession. In discussing the need for supervision, the Board also mentioned the need to protect the

public from future violations by Dr. Wright. We affirm the chancellor's finding that the Board's policy justification complied with section 4-5-314(c) of the Tennessee Code.

## Ex Parte Communications

In his final issue, Dr. Wright contends the administrative record reveals that, during a break in the Board's deliberations, the administrative law judge had an *ex parte* conversation with one of the Board members. Dr. Wright contends this *ex parte* communication violated the following: (1) section 4-5-304(a) of the Tennessee Code prohibiting *ex parte* communications in contested case hearings; (2) the administrative law judge's own instruction to the Board prior to deliberating; (3) section 8-44-104(a) of the Tennessee Code requiring the meeting of a government body to be fully recorded; and (4) section 4-5-319(c) of the Tennessee Code requiring a record to be made of all oral proceedings before an administrative agency. Accordingly, Dr. Wright urges this Court to declare the Board's final order void and of no effect pursuant to section 8-44-105 of the Tennessee Code.

The UAPA requires an agency conducting a contested case hearing to maintain an official record of the entire proceedings conducted before the administrative body, which shall consist of "matters placed on the record after an *ex parte* communication." Tenn. Code Ann. § 4-5-319(b)(11) (2003). The UAPA also expressly states that:

> Unless required for the disposition of *ex parte* matters specifically authorized by statute, an administrative judge, hearing officer or agency member serving in a contested case proceeding may not communicate, directly or indirectly, regarding any issue in the proceeding, while the proceeding is pending, with any person without notice and opportunity for all parties to participate in the communication.

Tenn. Code Ann. § 4-5-304(a) (2003). "The hearing shall be open to public observation pursuant to the provisions of title 8, chapter 44, unless otherwise provided by state or federal law." Tenn. Code Ann. § 4-5-312(d) (2003). Once a petition for judicial review of the agency's decision is filed, the agency "shall transmit to the reviewing court the original or a certified copy of the *entire* record of the proceedings under review." Tenn. Code Ann. § 4-5-322(d) (2003) (emphasis added).

The administrative record does not support Dr. Wright's conclusion that an *ex parte* communication occurred during the Board's deliberations. During the course of the deliberations the following exchange occurred:

> Dr. Whelan: I think we're — while maybe not in agreement, there's understanding. And it's your motion to change or drop it. Someone else can make a motion if they like. We do need to go back and visit one other part of it, and I might ask for some clarification

-13-

here. The original proposal — motion was for a reprimand, and I believe that a reprimand is just something that's written as opposed to probation, which is where we're taking some action. Am I correct on that? So this would be a probation, not a reprimand.

The Court: What you're saying is probationary, the things — that we need to put him under guidance and counseling and supervision. That is probationary as opposed to a reprimand.

Dr. Freeman: Well, we could issue a reprimand and put his license on probation.

Dr. Whelan: Can you wait —

Ms. King: Are we almost through?

Dr. Whelan: Yeah, I mean, just for — the Judge is going to give us some information —

The Court: Okay. What was your question? I'm sorry.

Dr. Whelan: Oh, I thought you were about to say something. A board member needs to take a brief break.

The Court: *You need to clarify that on your reprimand versus the other.* There's also maybe a point of question on your fines and penalties — I don't know whether it matters to you, but the money may go into your — I think the money goes into your budget. It doesn't go into the general fund.

Dr. Whelan: Okay. On that point, let's take a brief break for board members to — board members, let's take a maximum of ten minutes so we can come back and try to finish this up.

(Break in proceedings.)

Dr. Whelan: *The judge informed us that, in fact, we need to be probation rather than reprimand.* Correct me if I'm wrong. We're talking about a probation here, not a reprimand. So one of the things about the motion is that it needs to be about probation to do these other things. . . .

As a general matter, "[t]he party claiming bias as a result of ex parte communications must prove both the existence and content of the alleged communication, and the record may negate any claim that the communication created undue bias in the decisionmaker." 73 C.J.S. *Public Administrative Law and Procedure* § 127 (2004). Our review of the record does not lead us to draw the same inference urged upon this Court by Dr. Wright. *See Ark. Appraiser Licensing & Certification Bd. v. Fletcher*, 933 S.W.2d 789, 792 (Ark. 1996). To the contrary, the record reveals

that the Board members merely took up the same topic mentioned by the administrative law judge prior to the break in their deliberations. Accordingly, we affirm the chancery court's finding that there were no *ex parte* communications during the administrative proceeding before the Board.

## Conclusion

For the reasons contained herein, we affirm the decisions of the chancery court and the Tennessee Board of Examiners in Psychology in all respects. Costs of this appeal are to be assessed against the Appellant, Dr. Fred H. Wright, and his surety, for which execution may issue if necessary.

 

 

 

 

                 _____

                 ALAN E. HIGHERS, JUDGE