# SUPREME COURT OF ARKANSAS

**No.** CV–13–870

| | |
|---|---|
| ARKANSAS DEPARTMENT OF HUMAN SERVICES<br><br>APPELLANT<br><br>V.<br><br><br>GORDON PIERCE<br><br>APPELLEE | Opinion Delivered May 29, 2014<br><br>APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, [NO. CV–12–55]<br><br>HONORABLE DAVID G. HENRY, JUDGE<br><br>REVERSED AND REMANDED. |

**JIM HANNAH, Chief Justice**

Appellant, the Arkansas Department of Human Services ("DHS"), appeals from an order of the Arkansas County Circuit Court reversing and remanding DHS's decision that appellee, Gordon Pierce, was ineligible for Medicaid benefits. The circuit court ruled that retirement accounts owned by appellee's spouse, Martha Pierce, should not have counted in the determination of Gordon's eligibility for long-term-care Medicaid benefits. DHS appealed to the Arkansas Court of Appeals, which recommended certification of the appeal to this court because it involves an issue of first impression and substantial public interest. This court accepted certification, and our jurisdiction is proper pursuant to Arkansas Supreme Court Rule 1–2(d)(2) (2013). We hold that a spouses's individual retirement account ("IRA") and 401(k) may be countable resources under the Medicare Catastrophic Coverage Act of 1988, 42 U.S.C. § 1396r–5. Therefore, we reverse and remand the circuit court's order.

This case requires the court to interpret the "spousal impoverishment" provisions of the Medicare Catastrophic Coverage Act of 1988 (the "MCCA"), 42 U.S.C. § 1396r-5, "a complex set of instructions made part of the federal Medicaid statute." *Wis. Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 477 (2002). Medicaid was enacted in 1965 as Title XIX of the Social Security Act, and the "federal Medicaid program provides funding to States that reimburse needy persons for the cost of medical care." *Id*. at 479.[1] "'Each participating State[2] develops a plan containing reasonable standards . . . for determining eligibility for and the extent of medical assistance,' within boundaries set by the Medicaid

---

[1]As noted by the Missouri Court of Appeals,

Language in the federal Medicaid law and in the statutes and regulations of states that participate in the Medicaid program has been characterized, inter alia, as (1) a "virtually impenetrable 'Serbonian bog,' " *Ross v. Giardi*, 237 Conn. 550, 680 A.2d 113, 116–17 (Sup. 1996), (2) "almost unintelligible to the uninitiated," *Friedman v. Berger*, 547 F.2d 724, 727 n.7 (2d Cir. 1976), and (3) an "aggravated assault on the English language, resistant to attempts to understand it." *Friedman v. Berger*, 409 F. Supp. 1225, 1225–26 (S.D.N.Y. 1976).

*Maples v. Dep't of Soc. Servs*., 11 S.W.3d 869, 873 n.5 (Mo. Ct. App. 2000).

[2]If a state participates in Medicaid, it must provide coverage to the "categorically needy." 42 U.S.C. § 1396(a)(10)(A) (Supp. II 1982). These are persons eligible for cash assistance under either the Aid for Dependent Children program or the Supplemental Security Income program. *See Atkins v. Rivera*, 477 U.S. 154, 157 (1986). Congress has also enacted an optional program for the "working poor" who are deemed "medically needy." *Ramsey v. Dep't of Human Servs*., 301 Ark. 285, 287, 783 S.W.2d 361, 362 (1990). The "medically needy" become eligible for Medicaid benefits when their income and assets are reduced by incurred medical expenses that reduce their income and assets below certain established levels. *Id*., 783 S.W.2d at 362. This then puts them in roughly the same position as the "categorically needy." *Id*., 783 S.W.2d at 362. Arkansas has elected to include this optional plan under its State Medicaid Plan. *Id*., 783 S.W.2d at 362.

statute and the Secretary of Health and Human Services." *Id*. (quoting *Schweiker v. Gray Panthers*, 453 U.S. 34, 36 (1981)); 42 U.S.C. § 1396a(a)(17). "In formulating those standards, States must 'provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, *available* to the applicant.'" *Blumer*, 534 U.S. at 479 (emphasis in original) (citing § 1396a(a)(17)(B)). "[S]tate methodologies for determining eligibility must be 'no more restrictive' than the federal methodology that would be employed under the supplemental security income [SSI] program." *Geston v. Anderson*, 729 F.3d 1077, 1079 (8th Cir. 2013); 42 U.S.C. § 1396a(a)(10)(C)(i). "A State's methodology is considered 'no more restrictive' if 'additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance.'" *Geston*, 729 F.3d at 1079; § 1396a(r)(2)(B).

"Because spouses typically possess assets and income jointly and bear financial responsibility for each other, Medicaid eligibility determinations for married applicants have resisted simple solutions." *Blumer*, 534 U.S. at 479. Prior to the enactment of the MCCA, when one spouse entered a nursing home (or other institution) and applied for Medicaid, each spouse was treated as a separate household. *See* H. R. Rep. No. 100–105(II) (1987), *reprinted in* 1988 U.S.C.C.A.N., 1987 WL 61566, at *66. Income, such as Social Security checks, pensions, and interests or dividends from investments, were considered to belong to the spouse whose name was on the instrument conveying the funds. *Id*. Thus, when the husband, for example, entered a nursing home and the couple's pension check had only the husband's name on it, all of that income was attributed to him when determining Medicaid,

leaving the wife destitute. *Id*. Conversely, if the wife entered the nursing home, because none of the income was considered hers, the husband was under no obligation under federal law to contribute any income toward the cost of her care. *Id*.

The rule for attribution of resources was basically the same as that for attributing income. *Id*. Generally, in the month following institutionalization, resources to which a spouse had unrestricted access, such as a joint savings account, were considered available to that spouse for eligibility purposes. *Id*. On the other hand, assets held solely by the community spouse were, after the first month, considered to belong to her, and she had no obligation under federal law to contribute any amount of such resources toward the costs of care of the institutionalized spouse. *Id*. at *66–67. Thus, before the enactment of the MCCA, "[m]any community spouses were left destitute by the drain on the couple's assets necessary to qualify the institutionalized spouse for Medicaid and by the diminution of the couple's income posteligibility to reduce the amount payable by Medicaid for institutional care. Conversely, couples with ample means could qualify for assistance when their assets were held solely in the community spouse's name." *Blumer*, 534 U.S. at 480 (internal citation omitted).

In the MCCA, Congress sought to end the "pauperization" of the community spouse "by assuring that the community spouse has a *sufficient—but not excessive—amount* of income and resources available . . . while . . . [the institutionalized spouse] is in a nursing home at Medicaid expense." H. R. Rep. No. 100–105(II), at *65. (Emphasis added.) In addition, "Congress intended to close the loophole where a couple could shelter resources in the

community spouse's name while the institutionalized spouse received Medicaid." *Johnson v. Guhl*, 91 F. Supp. 2d 754, 761 (D. N. J. 2000).

"To achieve those goals, the MCCA requires that at the time of institutionalization, a 'snapshot' of the total value of the couple's resources owned by either the institutionalized or community spouse is inventoried or assessed." *Id*.; 42 U.S.C. § 1396r-5(c)(1)(A). The couple's resources are divided into countable and exempt assets and one-half of the total value of the resources "to the extent either the institutionalized spouse or the community spouse has an ownership interest" is considered a spousal share. 42 U.S.C. § 1396r-5(c)(1)(A). To avoid impoverishment of the community spouse, the community spouse is allowed a "community spouse resource allowance" of the couple's assets. 42 U.S.C. § 1396r-5(f)(2).

The Arkansas Department of Human Services Medical Services Policy Manual defines the "community spouse resource allowance" ("CSRA") as the maximum amount of the institutionalized spouse's resources which may be transferred to the community spouse or to another for the sole benefit of the community spouse. Ark. Admin. Code 016.20.1-3337.1. Arkansas's "community spouse maximum resources" ("CSMR") is the total amount of resources which may be considered available to the community spouse; this amount includes resources held solely by the community spouse (in which the institutionalized spouse has no ownership interest) and the CSRA. *Id*. At the time of the application, all resources held by either the institutionalized spouse or the community spouse shall be considered available to the institutionalized spouse to the extent that the resources exceed the CSMR. Ark. Admin. Code 016.20.1-3337.4.

In the instant case, Gordon was admitted to a long-term-care facility on July 29, 2010, at which time he had been married to, and living in the same home with, Martha for forty-six years. Hoping Gordon's medical condition would improve, Martha did not apply for Medicaid assistance until December 29, 2011. As part of the application process, the Pierces indicated that they had, inter alia, two retirement accounts. The retirement accounts consisted of an IRA and a 401(k), and both accounts were in Martha's name only. As of the date of the Medicaid application, Martha's IRA account had a balance of $325,245.92, and her 401(k) had a balance of $27,300.13. When calculating the couple's total available resources, a DHS caseworker included these two retirement accounts and found that the total amount of resources held by Gordon and Martha at the time of the application was $358,550.38, and that the CSMR was $109,560;[3] therefore, the value of countable resources for Gordon's application was $248,990.38. Because the maximum amount of resources the applicant may have and still be eligible for nursing-home-care benefits is $2,000, the caseworker denied Gordon's application.

Gordon appealed the denial of his application. In his brief and in oral arguments before a DHS hearing officer, Gordon's attorney contended that federal law exempted Martha's retirement accounts in calculating Gordon's resources for purposes of Medicaid eligibility. The hearing officer disagreed, finding that DHS had acted correctly when it

---

[3]Pursuant to DHS's long-term-care resource-eligibility worksheet, if the total resources are under $21,912, the community spouse gets all. If the total resources are $21,912 to $43,824, the community spouse gets $21,912. If the total resources are $43,824 to $219,120, the community spouse gets one-half. If the total resources are over $219,120 the community spouse gets $109,560.

determined that Martha's IRA and 401(k) accounts were countable resources and not subject to an exclusion. Gordon then filed a petition for judicial review with the circuit court. The circuit court reversed and remanded, concluding that, based on the briefs and arguments of counsel and the holding and discussion in *Keip v. Wisconsin Department of Health & Family Services*, 606 N.W.2d 543 (Wis. Ct. App. 1999), DHS should not have counted against Gordon's Medicaid eligibility the retirement accounts owned by Martha.

Review of administrative agency decisions, by both the circuit court and the appellate court, is limited in scope. *E.g.*, *Ark. State Highway & Transp. Dep't v. Lamar Advantage Holding Co.*, 2011 Ark. 195, at 4, 381 S.W.3d 787, 790. The standard of review to be used by both the circuit court and the appellate court is whether there is substantial evidence to support the agency's findings. *Id.*, 381 S.W.3d at 790. The appellate court's review is directed, not toward the circuit court, but toward the decision of the agency, because administrative agencies are better equipped by specialization, insight through experience, and more flexible procedures than courts, to determine and analyze legal issues affecting their agencies. *Id.*, 381 S.W.3d at 790. When reviewing such decisions, we uphold them if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *Id.*, 381 S.W.3d at 790. We review issues of statutory interpretation de novo; however, the interpretation placed on a statute or regulation by an agency or department charged with its administration is entitled to great deference and should not be overturned unless clearly wrong. *Id.*, 381 S.W.3d at 790.

The only issue on appeal is whether, under federal law, retirement accounts owned

by a community spouse may be countable resources when determining Medicaid eligibility

for an institutionalized spouse. MCCA provides as follows:

> (a) Special treatment for institutionalized spouses
>
> (1) Supersedes other provisions
>
> In determining the eligibility for medical assistance of an institutionalized spouse (as defined in subsection (h)(1) of this section), the provisions of this section supersede any other provision of this subchapter (including sections 1396a(a)(17) and 1396a(f) of this title) which is inconsistent with them.
>
> . . .
>
> (3) Does not affect certain determinations
>
> Except as this section specifically provides, this section does not apply to--
>
> (A) the determination of what constitutes income or resources, or
>
> (B) the methodology and standards for determining and evaluating income and resources.

42 U.S.C. § 1396r–5(a)(1), (3).

MCCA also specifically provides that the term "resources" does not include resources

excluded under 42 U.S.C. § 1382b(a) or (d) or resources that would be excluded under §

1382b(a)(2)(A) but for the limitation on total value described in that section. 42 U.S.C. §

1396r–5(c)(5). Section 1382b(a) and (d) specifically excludes, inter alia, the home, household

goods, personal effects, an automobile not in excess of an amount determined to be

reasonable by the Commissioner, funds set aside for burial expenses, and "other property

which is so essential to the means of self-support of such individual (and such spouse) as to

warrant its exclusion, as determined in accordance with and subject to limitations prescribed

by the Commissioner of Social Security . . . ."

MCCA does not specifically exclude IRAs or 401(k)s. Likewise, the Arkansas regulation does not specifically exclude IRAs or 401(k)s. *See* Ark. Admin. Code 016.20.1-3332.3 (stating that the following items of personal property qualify for special exclusion when specific conditions are met: (1) automobile, (2) life insurance policies, (3) household goods and personal effects, (4) income producing and non-home property, (5) burial spaces and funds; (6) SSI or SSA retroactive payments; and (7) funds from a class-action settlement from the case of *Susan Walker v. Bayer Corp.*). Rather, the Arkansas regulation states that resource items which do not meet conditions for exclusion will be included with countable resources. *Id*.

DHS contends that, because the MCCA and the Arkansas regulation do not specifically exclude IRAs and 401(k)s from the eligibility determination, the circuit court erred in concluding that Martha's retirement accounts were not countable resources. Gordon acknowledges that there is no specific exclusion under the MCCA or the Arkansas regulation, but he contends that because the MCCA is part of the Medicaid Act, this court should look at the Medicaid-eligibility requirements when determining whether resources are countable. Specifically, he contends that, pursuant to the "no more restrictive" provision of the Medicaid Act, a state's standards for determining an applicant's Medicaid eligibility may be no more restrictive than the eligibility requirements for SSI. Gordon maintains that, under the SSI guidelines, Martha's retirement accounts would have been excluded from an SSI-eligibility determination; therefore, he contends that the accounts must be excluded from

a Medicaid–eligibility determination. Gordon cites 20 C.F.R. § 416.1202(a), which provides, in relevant part:

> Married individual. In the case of an individual *who is living with* a person not eligible [for SSI benefits] and who is considered to be the husband or wife of such individual . . . , such individual's resources shall be deemed to include any resources, not otherwise excluded under this subpart, of such spouse whether or not such resources are available to such individual. In addition to the exclusions listed in § 416.1210 , we also *exclude* the following items:
>
> (1) *Pension funds that the ineligible spouse may have. Pension funds are defined as funds held in individual retirement accounts (IRA), as described by the Internal Revenue Code, or in work-related pension plans (including such plans for self-employed persons, sometimes referred to as Keogh plans).*

(Emphasis added.)

DHS, citing *Houghton v. Reinerston*, 382 F.3d 1162 (10th Cir. 2004), responds that the MCCA renders the "no more restrictive" provision inapplicable. In *Houghton*, the State of Colorado revised its Medicaid-eligibility guidelines used to calculate a married couple's resources when a spouse enters a nursing home and changed the way it classified self-funded retirement accounts such as IRAs, 401(k)s, and 403(b)s. *Id*. at 1166. Prior to the revision, Colorado did not classify self-funded retirement accounts held by the community spouse as "resources" available to support the institutionalized spouse. *Id*. Then, Colorado began classifying those retirement accounts as countable resources. *Id*. Plaintiffs challenged the revision, contending that the new rule violated federal law because it was more restrictive than the provisions for determining SSI eligibility. *Id*. at 1170–71. The *Houghton* court rejected this argument, stating,

> We agree that the Medicaid Act's eligibility requirements (and therefore the MCCA's eligibility requirements unless otherwise explicitly noted) must be no more restrictive

10

than the SSI eligibility requirements, but the SSI provides no guidance on the issue raised here. Notably, § 416.1202(a) applies only when an SSI applicant is *living with* his or her spouse. By definition, an institutionalized spouse and a community spouse in the Medicaid context do not live together. We therefore conclude that neither the SSI, nor its corresponding guidelines, address the eligibility requirements where one spouse is institutionalized.

*Id.* at 1171 (emphasis in original).

The Supreme Court of New Jersey reached a similar conclusion in *Mistrick v. Division of Medical Assistance & Health Services*, 712 A.2d 188 (N.J. 1998), another case relied on by DHS. Even though the New Jersey Medicaid regulations did not specifically exclude a community spouse's pension plans and IRAs from the eligibility determination, the New Jersey Superior Court, Appellate Division, held that pension plans and IRAs were required to be excluded from the determination because of the "no more restrictive" methodology provision. *Id.* at 192. The New Jersey Supreme Court reversed:

> MCCA provides that it supersedes any other provision that is inconsistent with it. 42 U.S.C.A. § 1396r-5(a)(1). MCCA further indicates that the term "resources" does not include those items excluded from the definition of "resources" pursuant to 42 U.S.C.A. § 1382b(a) and (d). 42 U.S.C.A. § 1396r-5(c)(5). Those subsections do not exclude IRAs or pension plans from the determination of "resources." However, the SSI regulation, 20 C.F.R. § 416.1202, excludes for purposes of determining SSI eligibility IRAs owned by an SSI–ineligible spouse living in the same household. On two grounds, however, we conclude that reliance on that SSI regulation is misplaced.

> First, the regulation does not apply generally in determining SSI eligibility, but applies only to exclude IRAs owned by ineligible spouses of SSI-eligible individuals living in the same household. Its narrow application, therefore, does not render the exclusion of IRAs in that specific circumstance a benchmark for determination of eligibility in the case of medically needy or optionally categorically needy applications.

> Second, even assuming the regulation excluding IRAs for purposes of SSI eligibility had a broader scope, we find the methodology used in that regulation inapplicable here because we conclude that the "no more restrictive" provision is superseded by MCCA. MCCA explicitly provides that it supersedes any provision

that is inconsistent with it. For purposes of determining medically needy or optionally categorically needy eligibility, application of a methodology "no more restrictive" than the SSI methodology set forth in 20 C.F.R. § 416.1202, which excludes IRAs, would clearly be inconsistent with MCCA, which specifies by reference to 42 U.S.C.A. 1382b(a) and (d) what items are excluded from the determination of resources, without excluding IRAs. In that context, the conclusion is inescapable that MCCA supersedes the "no more restrictive" provision. *See* 42 U.S.C.A. §§ 1396a(a)(10)(C)(i)(III), 1396a(r)(2)(A). Thus, MCCA requires the inclusion of the community spouse's IRA in the determination of the institutionalized spouse's resources.

The legislative history of MCCA supports our conclusion. The Senate amendment to the House bill proposed an additional provision concerning the treatment of resources that would have excluded "resources that are necessary to produce income that is available to the community spouse or the family allowance." H.R. Conf. Rep. No. 100-661, at 263 (1988), *reprinted* in 1988 U.S.C.C.A.N. 923, 1041. However, the conference agreement "[did] not exclude from countable resources those assets necessary to produce income available to the community spouse or the family allowance." 1988 U.S.C.C.A.N. at 1043. Instead, the agreement provided that "either the institutionalized or the community spouse may request a fair hearing as to whether the community spouse resource allowance is adequate to generate sufficient income to raise the community spouse's income to the minimum monthly maintenance needs allowance." *Ibid*. We are confident that had Congress intended MCCA to exclude resources necessary to produce income, such as IRAs, the proposed exclusion would have been adopted.

We repeat that the SSI regulation relied on by respondent, 20 C.F.R. § 416.1202, applies only to a spouse eligible for SSI benefits who is living with his or her ineligible spouse. Respondent contends that she and her husband were living together at the time of their resource assessment; the Division contends that they were not. MCCA provides that the "snapshot" assessment of a couple's resources and of the community spouse's share is computed "as of the beginning of the first continuous period of institutionalization ... of the institutionalized spouse." 42 U.S.C.A. § 1396r-5(c)(1). An institutionalized spouse is "an individual who ... is in a medical institution or nursing facility ... and is married to a spouse who is not in a medical institution or nursing facility." 42 U.S.C.A. § 1396r-5(h)(1). Therefore, by definition an institutionalized spouse cannot be living with a community spouse. However, we note that the dispute between the parties concerning whether the Mistricks were living together is academic. The question is not whether the SSI regulation concerning spouses who live together actually applied, but whether MCCA superseded the "no more restrictive methodology" provision. Whether the Mistricks were living together at the time of their resource assessment is of no import because

we conclude that the "no more restrictive" provision is inconsistent with and therefore is superseded by MCCA.

*Mistrick*, 712 A.2d at 196–97 (alteration in original).

The Ohio Court of Appeals concurred, holding that a spouse's IRA is a countable resource under the MCCA and rejecting the argument that the "no more restrictive" provision barred inclusion of an IRA. *See Martin v. Ohio Dep't of Human Servs.*, 720 N.E.2d 576 (Ohio Ct. App. 1998), *abrogated on other grounds by Pack v. Osborn*, 881 N.E.2d 237 (Ohio 2008). The *Martin* court explained:

> As the New Jersey Supreme Court noted, the provision of the MCCA establishing that it supersedes conflicting provisions of the federal code indicates that the MCCA establishes a separate method of evaluating resources for Medicaid eligibility for institutionalized spouses. The method established is generally much more lenient in the exclusion of resources than SSI standards. To the extent that the MCCA is less lenient, it was intended to remedy prior inequities between married couples created by different recognition of whether assets were held in the name of one spouse or the other. A rule that would exclude an IRA held by the community spouse would only revitalize this old distinction by treating that couple more leniently than one in which the institutionalized spouse held the IRA. We are not troubled, therefore, that the MCCA might consider a resource available that is excluded under SSI standards.

*Id.* at 583; *accord Mannix v. Ohio Dep't of Human Servs.*, 731 N.E.2d 1154 (Ohio Ct. App. 1999) (rejecting argument that exclusion of IRA was mandated by 20 C.F.R. § 416.1202(a)).

For his part, Gordon urges this court to follow *Keip*, 606 N.W.2d 543, and hold that the "no more restrictive" provision mandates that a community spouse's retirement accounts cannot be included as a countable resource when determining an institutionalized spouse's Medicaid eligibility. In *Keip*, Walter Keip entered a nursing home on October 17, 1996, returned to his home before Christmas that year, and was readmitted to the nursing home on April 23, 1997. *Id.* at 545. In June 1997, Walter's wife, Caryl Keip, began the medical-

assistance ("MA") application process on Walter's behalf. *Id*. Caryl learned that the Wisconsin Department of Health and Family Services ("WDHFS") intended to count her IRA as an asset in determining Walter's eligibility for MA and that the inclusion would render him ineligible. *Id*. To accelerate Walter's eligibility date, Caryl used about half of the funds in her IRA to purchase an irrevocable fixed annuity. *Id*. This type of annuity did not count as an asset for MA eligibility purposes. *Id*. Walter qualified for MA as of August 1997, but WDHFS denied him benefits for the period prior to that month. *Id*.

The Wisconsin Court of Appeals determined that WDHFS erred in interpreting the federal spousal-impoverishment provisions to require the inclusion of a community spouse's IRA when determining the MA eligibility of the institutionalized spouse. *Id*. The court rejected WDHFS's argument that Congress intended the resource exclusions enumerated in the spousal-impoverishment provisions of the MCCA to supplant rather than supplement the resource exclusions applicable in SSI-eligibility determinations. *Id*. at 550. The court concluded that the SSI regulation at 20 C.F.R. § 416.1202(a) excluded Caryl's IRA, noting that under applicable MA eligibility criteria, the Keips were considered to have been living together at the time of Walter's first institutionalization in October 1996, notwithstanding his temporary absence for care and treatment. *Id*. In addition, the court pointed out that WDHFS's decision to include Caryl's IRA when determining Walter's eligibility was *not* based on guidance in the *MA Handbook*, Wisconsin's medical-assistance manual, because the *MA Handbook*'s appendix regarding "spousal impoverishment" specifically stated: "Don't count the following assets: . . . All assets not counted in determining SSI-related MA

14

eligibility." *Id*. at 549. Thus, the court noted that WDHFS's decision to include Caryl's IRA as a countable resource for Medicaid eligibility was *inconsistent* with the guidelines stated in the *MA Handbook* and that the *MA Handbook* "strongly implie[d] that the department had previously concluded that an asset of either spouse excluded under federal SSI-eligibility regulations must also be excluded when determining MA eligibility under the spousal impoverishment provisions." *Id*.

DHS contends that Gordon's reliance on *Keip* is misplaced because Arkansas does not have a provision in its regulation similar to the one in Wisconsin's medical–assistance manual that instructed personnel to exclude from consideration for medical–assistance eligibility any assets that were excluded in determining SSI eligibility. Moreover, DHS contends that, unlike Wisconsin, Arkansas has adopted the approach that all assets available to an individual are considered countable resources unless specifically excluded by policy. *See* Ark. Admin Code 016.20.1–3332.3 (stating that resource items which do not meet conditions for exclusion will be included with countable resources). According to DHS, this method for counting resources is consistent with the public policy of the State of Arkansas, as stated, in relevant part, in Arkansas Code Annotated section 20-77-101(a) (Repl. 2001):

> It is the intent of the General Assembly that the Medicaid medical assistance program administered by the Department of Human Services is intended to be supplemental to other potential sources of payment which are or may be available to pay for the costs of medical care delivered to residents of this state. To ensure that the appropriated funds are available to meet the needs of those residents, it is hereby declared the public policy of the State of Arkansas that the program is the payor of last resort to supplement and not supplant other sources which are or may be available to any individual[.]

Finally, DHS contends that Congress, in enacting the MCCA, intended to leave to

the states the determination of whether retirement accounts are countable resources. DHS

again points to the *Houghton* case, in which the Tenth Circuit concluded that,

> unless an asset is specifically mentioned by the MCCA, the classification of that asset for eligibility purposes depends on the federal Medicaid Act's treatment of that asset. Applying this rule to retirement accounts, we conclude that Congress did not explicitly exclude retirement accounts when defining resources. Rather, we conclude that Congress neither foreclosed nor mandated a particular classification for retirement accounts.

*Houghton*, 382 F.3d at 1171.

After reviewing the legislative history of the MCCA and studying the persuasive

authority cited by the parties in this case, we conclude that the circuit court erred in finding

that DHS was not permitted to count against Gordon the retirement accounts owned by

Martha. Although the Medicaid Act's eligibility requirements (and therefore the MCCA's

eligibility requirements unless otherwise noted) must be no more restrictive than the SSI

eligibility requirements, the regulation at 20 C.F.R. § 416.1202(a) provides no guidance

when one spouse is institutionalized. *See Houghton*, 382 F.3d at 1171 (noting that §

416.1202(a) applies only when an SSI applicant is *living with* his or her spouse). Moreover,

even assuming the SSI regulation did provide some guidance, the MCCA supersedes any

provision that is inconsistent with it. Therefore, the "no more restrictive" provision is

inapplicable in this case. While we do not agree with the *Mistrick* court that the MCCA

*requires* the inclusion of the community spouse's IRA in the determination of the

institutionalized spouse's resources, *see* 712 A.2d at 197, we do agree with DHS's assertion

that Congress has left it to each state to determine whether to include retirement accounts

in the computation of a couple's resources. *See Houghton*, 382 F.3d at 1173 ("By not taking

a clear position on the status of retirement accounts, Congress intended, through cooperative federalism, to leave resolution of this complicated matter to the states."). We conclude that DHS's policy of considering as countable resources a community spouse's retirement accounts does not violate federal law.

Reversed and remanded.

HOOFMAN, J., dissents.

**CLIFF HOOFMAN, Justice, dissenting.** Because I believe the majority errs in reversing and remanding the circuit court's order, I respectfully dissent. It is undisputed that appellee Gordon Pierce ("Gordon") had been married and lived with his wife, Martha Pierce ("Martha") for forty-six years prior to being admitted to a long-term-care facility on July 29, 2010, for health reasons. Rather than seeking Medicaid assistance immediately and hoping that his condition would improve, Gordon waited until December 29, 2011, to apply for assistance. It is undisputed that Gordon would have qualified for Medicaid benefits if the two retirement accounts that were titled in Martha's name only were not considered countable resources. Therefore, as the majority correctly indicates, the sole issue on appeal is whether a 401k and an IRA owned by a community spouse are countable resources under federal law when determining Medicaid eligibility for an institutionalized spouse.

In the absence of any binding federal or Arkansas case law on this specific issue, and rather than placing my reliance on *Houghton v. Reinerston*, 382 F.3d 1162 (10th Cir. 2004), as the majority does, I find the analysis in *Keip v. Wisconsin Department of Health & Family Services*, 606 N.W.2d 543 (Wis. Ct. App. 1999), more persuasive in this case.

17

This court's cardinal rule of statutory construction is to give effect to the intent of the legislature. *Barclay v. First Paris Holding Co.*, 344 Ark. 711, 42 S.W.3d 496 (2001). Where the language of a statute is plain and unambiguous, we determine legislative intent from the ordinary meaning of the language used. *Id.* When a statute is ambiguous, we must interpret it according to legislative intent. *Id.* Our review becomes an examination of the whole act, and we reconcile provisions to make them consistent, harmonious, and sensible in an effort to give effect to every part. *Id.* We also look to the legislative history, the language, and the subject matter involved. *Id.* We have also explained that literal meaning yields to legislative intent if the literal meaning leads to absurd consequences contrary to legislative intent. *Bank of Eureka Springs v. Evans*, 353 Ark. 438, 109 S.W.3d 672 (2003).

The majority aptly explains the background of the Medicaid program as it was enacted in 1965 and the enactment of the Medicare Catastrophic Coverage Act of 1988 ("the MCCA"), 42 U.S.C. § 1396r-5. In *Arkansas Department of Human Services v. Schroder*, this court explained,

> MCCA was designed "to protect the elderly and disabled population from the financial disaster caused by catastrophic health care expenditures not currently reimbursed under the Medicare and Medicaid programs." H.R.Rep. No. 100–105, pt. 2, at 65–68 (1998), reprinted in 1988 U.S.C.C.A.N. 803, 888. MCCA also "sought to close the loophole where a couple could shelter their assets by transferring them into the community spouse's name while the institutionalized spouse received Medicaid benefits." *Johnson v. Guhl*, 166 F. Supp. 2d 42 (D.N.J. 2001).

353 Ark. 885, 890–91, 122 S.W.3d 10, 14 (2003).

Under 42 U.S.C. § 1396a(a)(10)(C)(i) and 42 U.S.C. § 1396a(r)(2)(A) of the Medicaid Act, our state program can be "no more restrictive" in methodology for determining

eligibility than the federal methodology employed under the Supplemental Security Income ("SSI") program, and the "methodology is considered to be 'no more restrictive' if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance." 42 U.S.C.A. § 1382c(f)(1) provides,

> For purposes of determining eligibility for and the amount of benefits for any individual who is married and whose spouse is living with him in the same household but is not an eligible spouse, such individual's income and resources shall be deemed to include any income and resources of such spouse, whether or not available to such individual, except to the extent determined by the Commissioner of Social Security to be inequitable under the circumstances.

Pursuant to this authority, the Commissioner has promulgated 20 C.F.R. § 416.1202, which provides,

> § 416.1202 Deeming of resources.
>
> (a) Married individual. In the case of an individual who is living with a person not eligible under this part and who is considered to be the husband or wife of such individual under the criteria in §§ 416.1802 through 416.1835 of this part, such individual's resources shall be deemed to include any resources, not otherwise excluded under this subpart, of such spouse whether or not such resources are available to such individual. In addition to the exclusions listed in § 416.1210, we also exclude the following items:
>
> (1) Pension funds that the ineligible spouse may have. Pension funds are defined as funds held in individual retirement accounts (IRA), as described by the Internal Revenue Code, or in work-related pension plans (including such plans for self-employed persons, sometimes referred to as Keogh plans).

However, the MCCA, or "spousal impoverishment provisions," was subsequently enacted, and 42 U.S.C. § 1396r-5 provides the following relevant provisions:

> § 1396r-5. Treatment of income and resources for certain institutionalized spouses

(a) Special treatment for institutionalized spouses

>    (1) Supersedes other provisions
>    In determining the eligibility for medical assistance of an institutionalized spouse (as defined in subsection (h)(1) of this section), the provisions of this section supersede any other provision of this subchapter (including sections 1396a(a)(17) and 1396a(f) of this title) which is inconsistent with them.
>    . . . .
>    (3) Does not affect certain determinations
>    Except as this section specifically provides, this section does not apply to--
>           (A) the determination of what constitutes income or resources, or
>           (B) the methodology and standards for determining and evaluating income and resources.
> . . . .
>    (5) Resources defined
>    In this section, the term "resources" does not include--
>           (A) resources excluded under subsection (a) or (d) of section 1382b of this title, and
>           (B) resources that would be excluded under section 1382b(a)(2)(A) of this title but for the limitation on total value described in such section.

42 U.S.C. § 1382b lists a number of specifically excluded items from resources, including a home, household goods, personal effects, and an automobile. However, none of the listed exclusions in this section include pensions or retirement accounts, nor does the section specifically exclude pensions or retirement accounts. Thus, the issue in this case requires this court first to decide whether the exclusion under the SSI regulations for an ineligible spouse's pension and IRA remains viable under the subsequently enacted spousal-impoverishment provisions. I would conclude, as did the court in *Keip* and *Houghton*, that the provisions of the spousal-impoverishment law are ambiguous in this respect.

The court in *Keip* resolved the ambiguity by looking to the legislative intent of the MCCA as our rules of statutory construction would require us to do.

We conclude that the more reasonable interpretation is that Congress did not intend

to make it more difficult for a community spouse to remain self-sufficient by requiring that spouse to spend down or diminish the value of a pension fund or IRA in order to render his or her institutionalized spouse eligible for MA [medical assistance or Medicaid].

. . . .

[T]he explanation contained in the House Report regarding the spousal impoverishment provisions [states,] "The purpose of these revisions is to assure that the community spouse in these circumstances has income and resources sufficient to live with independence and dignity." H.R. REP. No. 100–105(II), at 69 (1988), *reprinted* in 1988 U.S.C.C.A.N. 803, 892.

Similarly, if we consider the scope and context of the spousal impoverishment provisions enacted in 1988, it seems clear that congressional intent was to preserve existing exclusions, while increasing the amount of assets a community spouse may retain. Except as the new provisions "specifically" provide, the "determination of what constitutes . . . resources" was not to change under the spousal impoverishment provisions.

. . . .

We fail to see how eliminating the exclusion for a spouse's pension or IRA, an exclusion that was explicitly recognized under SSI/MA eligibility rules prior to enactment of the spousal impoverishment provisions, assists in "closing a loophole" exploited by asset transfers between spouses. Employee pension funds and IRAs are not readily transferable between spouses. They are thus not the type of assets that could easily be retitled on the eve of the owning spouse's institutionalization.

In summary, we conclude that the more reasonable interpretation of 42 U.S.C. § 1396r-5 is that the statute does not remove the exclusion for an IRA held by a community spouse when an institutionalized spouse applies for MA. The ineligible spouse's IRA would be excluded in determining whether the applying spouse would be eligible for SSI, and Wisconsin's MA eligibility criteria may not be more restrictive than federal SSI eligibility requirements. The spousal impoverishment provisions only supersede those SSI eligibility criteria which are inconsistent with the provisions of § 1396r-5. In particular, the determination of what constitutes countable resources for eligibility purposes is unaffected unless the section "specifically provides" for different treatment. Nothing in § 1396r–5 specifically overrides the treatment of spousal IRAs for purposes of MA eligibility determinations, and reading in a repeal of the exclusion would be contrary to the primary purpose of the spousal impoverishment provisions.

*Keip*, 606 N.W.2d at 549–51 (footnotes omitted).

I agree with the analysis in *Keip* and the resolution of the ambiguity presented in applying the required federal law for the purposes of determining medicaid eligibility. The MCCA only supersedes those SSI eligibility criteria that are inconsistent with the provisions of section 1396r-5, and section 1396r-5 does not specifically override the exclusion of spousal pensions and IRAs for the purposes of Medicaid eligibility determinations. Furthermore, because our state program must be "no more restrictive," Martha's IRA and 401k accounts should not have been included as countable resources in determining Gordon's eligibility. To hold otherwise, as the majority does, would be inconsistent with the stated legislative intent for the MCCA's enactment.

Additionally, I do not agree with the majority's conclusion that 20 C.F.R. § 416.1202(a) does not apply because Gordon was not "living with" his or her spouse. This term is undefined in the regulation. However, it is undisputed that Gordon was married to, and lived with, Martha for forty-six years, and he was only institutionalized for medical reasons outside of his control. The majority appears to summarily conclude that "living together" must require the spouses to physically be located under the same roof *at the time of the application for benefits*. Therefore, the fact that Gordon delayed seeking Medicaid eligibility for seventeen months after his institutionalization in the hopes that he would recover and return home somehow now renders him ineligible because they were not "living together" *at the time of the application for benefits*.

This literal interpretation, in my opinion, does not give effect to the intent of the MCCA or the regulation. The consequences of the majority's interpretation would allow

an individual who applied for Medicaid eligibility before he or she was institutionalized or immediately after he or she was institutionalized (thereby fitting under some definition of a "temporary absence") to qualify for benefits, but the interpretation would penalize and exclude from eligibility an individual who waited to apply for the same benefits in the hopes that he or she may return home and not need the benefits. In the past, this court has said that it will not engage in interpretations that defy common sense and produce absurd results. *Shipley, Inc. v. Long*, 359 Ark. 208, 216, 195 S.W.3d 911, 915 (2004). Rather, I would hold that Gordon met the requirements of section 416.1202(a), excluding Martha's retirement accounts as countable resources, because it is consistent with the legislative intent "to assure that the community spouse in these circumstances has income and resources sufficient to live with independence and dignity." H. R. Rep. No. 100–105(II), at 69 (1988), *reprinted in* 1988 U.S.C.C.A.N. 803, 892. As such, I would affirm the circuit court's order reversing and remanding the hearing officer's order in this case.

*Erasmo J. Reyes*, Office of Policy and Legal Services, for appellant.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellee.